[Civ. No. 15618. Third Dist. Jan. 11, 1977.]

CRAWFORD MILLER et al., Plaintiffs and Appellants, v.
CITY OF SACRAMENTO et al., Defendants and Appellants.

864

COUNSEL

Milton L. McGhee for Plaintiffs and Appellants.

James P. Jackson, City Attorney, and Leliand J. Savage, Deputy City Attorney, for Defendants and Appellants.

OPINION

REGAN, J.—The City of Sacramento, by and through its city council, enacted Resolution No. 74-333 and Ordinance No. 3428, Fourth Series, creating the position of council budget analyst. A taxpayers' suit was filed challenging the power and authority of the council to create the position in this manner. Subsequent to preliminary motions, plaintiffs filed a supplemental complaint alleging that the council had negotiated with a prospective employee, Brian Teller, to fill the new position, a contract of employment had been drafted and a special meeting scheduled for the purpose of approving the contract. The supplemental complaint expressly challenged one provision of the proposed contract of employment which provided for severance pay for the full one-year term of the contract (from May 15, 1975, to May 15, 1976) if the council should terminate Teller before May 15, 1976. However, the supplemental complaint also challenged the whole contract by alleging that "[t]he provisions of said agreement conflict with provisions of the Charter, City of Sacramento and City Code, relating to employment of officers and employees of the City of Sacramento and benefits to which such officers and employees are entitled."

On May 2, 1975, the trial court rendered its judgment (order) on the supplemental complaint granting a permanent injunction, restraining

and enjoining the city council from acting upon, approving or executing the proposed contract of employment with Teller. The court found: "[T]he proposed employment agreement for a prospective Budget Analyst, in its totality, is in excess of the authority of the city council derived from the Constitution of the State of California [,] statutes and the Charter of the City of Sacramento." And as a conclusion of law that "the proposed employment agreement for a Budget Analyst . . . is in its entirety in excess of the Constitutional, statutory and Charter authority of the Council of the City of Sacramento and thus any obligation thereunder to expend funds or obligate the City of Sacramento for the expenditure of public funds under the aforesaid contract is unlawful."

The city appeals from the judgment (order) enjoining the city council permanently from approving or executing the proposed employment contract for a city budget analyst.

Plaintiffs have countered with an appeal from an order in the preliminary motions made prior to the filing of the supplemental complaint. Such appeal is from a nonappealable order. However the issues in this case are all before this court through defendants' appeal and we shall consider all the contentions and issues raised by all parties encompassed within the four corners of this case.

Plaintiffs contended before the trial court, and they contend on appeal, that (a) there is no authority in the Sacramento City Charter for the hiring of a budget analyst; (b) the character and duties of the position unlawfully infringe upon the authority of the city manager; (c) creation of the position constitutes an unlawful delegation of authority of the council and deprives the citizens of the benefits of representative local government; and (d) even if the council could lawfully create the position, it acted in violation and in excess of its authority by exempting the position from civil service requirements. None of these contentions is meritorious.

■ A city charter is like a state constitution but on a local level; it is a limitation of, not a grant of power. A chartered city under the "home rule" provisions of article XI, section 5, of the California Constitution has complete powers over municipal affairs and unless limited by the charter, the city council may exercise all powers not in conflict with the California Constitution. A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not *expressly* stated in the charter is clearly indicated; thus in

construing the charter no restriction on the city's power may be implied. (See *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894]; *Ruane* v. *City of San Diego* (1968) 267 Cal.App.2d 548, 558 [73 Cal.Rptr. 316].)

The Sacramento City Charter contains provisions specifying that the council has power and authority to exercise all powers of the city except as otherwise provided therein; that the council shall select a city manager, city attorney, city treasurer, city clerk and "such other officers and employees of its own body as may be deemed necessary" to serve during its pleasure. (Sacramento City Charter, §§ 18, 22.) Also, the council is authorized specifically to create and abolish new "offices and employments" not specifically mentioned in the charter or created by it. (Charter, § 5.) We read these provisions to authorize the creation by the city council of the position of budget analyst as an officer or employee of its own body, unless the council is otherwise expressly prevented from so doing by some other provision or provisions in the charter. We do not find any such provisions.

Plaintiffs contend that the duties of the budget analyst are an "infringement" on the authority of the city manager in violation of charter section 21. This section provides that the city council shall not interfere with the city manager or prevent him from exercising his own judgment in appointment of officers and employees in the "administrative service," and the council shall deal with the administrative service solely through the city manager. It is plaintiffs' position that the term "administrative service" encompasses all officers and employees who deal with the development and presentation of the city budget, particularly the city manager. Plaintiffs also argue that the language of charter section 22 providing that the council shall select such "officers and employees of its own body as may be deemed necessary," must be read in the light of charter section 21 as limited to only aides and assistants as would be uniquely needed for the councilmen to perform their duties as elected officials, such as assistants, secretaries and the like. To bolster their argument that the new council budget analyst would "infringe" upon the administrative branch specifically the city manager's domain, plaintiffs refer to the fact that the job description for the new council budget analyst has the same qualifications and standards as that of the city position of financial management analyst who works under the city manager. It is a specious argument to assert, as plaintiffs have done, that because the administrative branch of the city government has a financial management analyst to assist the manager in budgetary operations, the

city council may not have a budget analyst with equal qualifications and similar job description to analyze budget matters for the legislative branch to assist it in *its* legislative work with the budget.[1] In absence of an express prohibition on the power or authority of the council to employ its own budget analyst to report to it, plaintiffs have sought to raise an implied one through either a possible conflict in charter provisions or by interpretation of two charter provisions. As pointed out hereinabove, the law is to the contrary. No restriction is to be implied, but even if we take plaintiffs' arguments as not within this limitation because they assert a conflict *within* the charter provisions themselves, we do not agree with plaintiffs' reading of the charter. It is our view the charter neither expressly nor by implication forbids the hiring of a council budget analyst or provides that the city manager has exclusive responsibility for analyzing, studying, reporting or making recommendations to the council on budgetary matters. We read no conflict into charter sections 21 and 22.

■ Plaintiffs contend the creation of the budget analyst position constitutes an unlawful delegation of authority *within* the city council and this deprives plaintiffs and all Sacramentans of rights and benefits of representative local government. This contention hardly merits a response by this court. It is based on a misapplication of the well-established doctrine that a legislative body, including a city council, cannot delegate its power to legislate to some other branch of the government. (See, e.g., *Kugler* v. *Yocum* (1968) 69 Cal.2d 371, 375 [71 Cal.Rptr. 687, 445 P.2d 303].) This has obviously not happened in the instant case by creation of the budget analyst to advise the council on budgetary matters. The official description of duties of the position make it clear that it is to conduct studies and review of budgetary matters and prepare reports and recommendations to the city council to assist it in its legislative budgetary functions, all in a manner consistent with the provisions of the charter.

■ Plaintiffs contend that the council violated the charter or exceeded its powers in making the council budget analyst position one in which the person selected would serve at the pleasure of the council, exempt from civil service. This contention must be rejected as without

[1]Although it has nothing to do with the legal issues before us and plays no part in our decision herein, we feel it appropriate to allude for a practical analogy to the long-established practice of the legislative branch of the state government, of which we take judicial notice, of employing a legislative analyst whose principal function is to report to that branch on budgetary matters before them which have been presented by the executive and administrative branch of the government.

merit. Plaintiffs base their contention on the general civil service provisions of the charter contained particularly in article VII, section 43, which lists the officers and employees who are or may be exempted from civil service. A budget analyst is not among them, but the provision allows the council to add others to those listed "in accordance with the intent and meaning of this section." (Charter, § 43.) Plaintiffs take the position that since those positions described by title or those groups or classes of positions described in section 43 do not expressly or impliedly include a position of budget analyst for the city council, the council has no authority to create such a position exempt from civil service. This ignores the plain language of section 22 of the charter which is a special provision of the charter relating to employees of the city council itself and which provides that such employees chosen by the council shall serve during its pleasure. It is a basic tenet of statutory construction that in reading the elements of an organic document such as a constitution, statute or charter, a special provision controls a general provision. (See *Rose* v. *State of California* (1942) 19 Cal.2d 713, 723-724 [123 P.2d 505]; Code Civ. Proc., § 1859; 45 Cal.Jur.2d, Statutes, §§ 119-120, pp. 628-629.) A position created under the special provision of section 22 providing for service at the pleasure of the council is lawfully and properly exempt from civil service without any violation of the civil service provisions of the charter, including section 43, which provides for the civil service system of the city.

Based on the foregoing, we hold that Resolution No. 74-333 and Ordinance No. 3428, creating the position of budget analyst, are valid.

■ Having concluded that the city council acted within its legal authority in creating the position of council budget analyst, we are left with the question which confronted the trial court in its second hearing after filing of the supplemental complaint, to wit, whether or not the specific contract proposed to be entered into between the city council and Teller to fill the new position was a valid contract within the powers of the council. The lower court decided it was not and enjoined the city council from executing it. Defendants have appealed from this order. Defendants contend that the proposed agreement of employment is not inconsistent with the state constitutional prohibition against the gifts of public funds. It was argued by plaintiffs to the trial court and is argued before this court that there are severance pay provisions in the proposed contract which are actually provisions for additional payment for past services in violation of article XI, section 10, of the California Constitution. That section provides, in part, that "[a] local government body may

not grant extra compensation or extra allowance to a public officer, public employee, or contractor after service has been rendered or a contract has been entered into and performed in whole or in part . . . ."

The proposed contract in question was an employment contract between the city and Teller, employing him as the new budget analyst at a salary of $2,000 per month to serve at the pleasure of the city council, commencing May 15, 1975. The portion of the proposed employment agreement between the city council and Teller which plaintiffs assert is violative of the constitutional provision quoted above reads as follows:

"In the event the Council of the City of Sacramento terminates EMPLOYEE prior to May 15, 1976, then and only in that event, EMPLOYEE shall be entitled as severance pay, to an amount equal to $2,000.00 per month from the date of said termination to May 15, 1976. If EMPLOYEE resigns, then no severance pay shall be paid. There shall be deducted from the severance pay provided herein the amount of any money earned or value of property or rights earned by EMPLOYEE from other sources during the period from the date of termination of EMPLOYEE by Council to May 14, 1976. For the purpose of determining the money or value of property or rights earned by EMPLOYEE from other sources, EMPLOYER may inspect all records, receipts or other relevant documents of EMPLOYEE, including applicable income tax returns."

It is the position of plaintiffs that the provision of the employment contract is a "political bonus" because it provides that should Teller be dismissed by the council at *any time* after he started work and before the expiration of one full year he would nevertheless get paid for working a whole year. Plaintiffs say this would be a gift of public funds for services not performed. They assert the term "severance pay" is misused in the agreement because if Teller were dismissed by the council as allowed by other terms of the contract providing that he served at their pleasure, he would be getting either a bonus or extra compensation for past services rendered or it would be payment for future services which were never performed.

Defendants, however, argue that there is no gift of public funds involved in this contract, asserting that the money would be paid for services rendered no matter when Teller might be terminated, and if he were terminated before the end of a year his salary would simply thereby be raised retroactively. Defendants contend that since this is an expenditure for a public employee doing a public job and the contract

*provided* for such an expenditure before the services were actually performed, the sum to be paid was not given or "granted" after the services were rendered or after the contract had been entered into and performed in whole or in part, as proscribed by article XI, section 10. Defendants also point to the validity of retroactive pay increases in some instances where salary rates are adjusted retroactively to a date at which the rates had been indefinite and subject to future determination. (See *San Joaquin County Employees' Assn., Inc.* v. *County of San Joaquin* (1974) 39 Cal.App.3d 83, 88 [113 Cal.Rptr. 912].) They draw an analogy, and claim the contract was one in which the salary rate was not actually fixed so that future adjustments were contemplated, and therefore the constitutional prohibition against extra compensation after services were rendered did not apply. They point out that the matter of compensation in contractual employment of a person to serve the council is one for that legislative body to decide. We agree with defendants' position. The mere possibility of a large expenditure in the nature of severance pay for a short term of service does not demonstrate contractual illegality in a public service contract. It is, rather, a policy matter of a legislative nature.

Plaintiffs had argued at trial, and also argue here, that charter section 71 was violated. That section provides, in pertinent part, that all salaries shall be in full compensation for all duties and services rendered. We do not perceive any violation of this charter provision by a severance pay clause. Plaintiffs also argue that certain moving expenses, vacation and retirement benefits provided for Teller in the proposed contract violate various other provisions in the city charter dealing with compensation for past services, and conflict with certain ordinances or with city "policies" as to employees. These arguments are meritless. We find no such violations of the charter or ordinances. As to alleged "policies," these are made by the council itself or the city manager, so that any "conflict" which might arise from the contract (although we see none) would constitute an implied exception by the council itself to any "policy" relating to personnel relations, for the limited purposes of that particular employment contract to be entered into by the council.

In summary, we have found defendants' contentions and arguments in favor of the validity of the resolution, ordinance and proposed contract to be persuasive, while plaintiffs' contentions and arguments we have

found to be without merit. The trial court erred in issuing its permanent injunction.

The judgment (order) is reversed.

Friedman, Acting P. J., and Reynoso, J., concurred.