Opinion
 

 ROTH, P. J.
 

 The Charter for the County of Los Angeles, article XII, section 53 provides: “Wherever any person in the service of the County is compelled to travel in the performance of his duty, he shall, in addition to his regular compensation, be reimbursed for his actual necessary expenditures for transportation, the hire of conveyances, and for lodging and meals. An itemized account of such expenditures shall be filed with the Clerk of the Board of Supervisors and be approved by the Auditor before being paid. The Board of Supervisors shall fix a maximum price to be paid for such lodging and meals, which shall be uniform and be made applicable to all persons alike, including members of the Board of Supervisors.”
 

 Respondents California Association of Professional Employees (CAPE) and Los Angeles County Professional Peace Officers’ Association (PPOA) contended successfully before the trial court that appellant County of Los Angeles’ (County) method of per-mile compensation
 
 [1]
 
 does not constitute a reimbursement Of the “actual necessary expenditures” arising from the operation of a car.
 

 
 *41
 
 The trial court found the following preliminary facts:
 

 “8. The transportation cost reimbursement provided in Los Angeles County administrative Code Section 60.4 [see note 1] adopted recommendations set forth in a Memorandum of Understanding entered into between various County labor organizations, including CAPE but excluding PPOA, and representatives of... County ... on November 16, 1971. The term of the Memorandum of Understanding was from December 31, 1971 through December 31, 1973. On December 31, 1973, the Memorandum of Understanding expired and no new Memorandum of Understanding has been entered into between the various County labor organizations, including CAPE and PPOA, and ... County ....
 

 “9. During 1973, representatives of the County entered into negotiations with representatives of CAPE, PPOA, and other organizations representing County permittees, for purposes of agreeing upon a formula for reimbursement of the costs of transportation for County employees, effective January 1, 1974., Negotiations failed to produce an agreement.
 

 “10. On or about December 13, 1973, CAPE, PPOA, and other labor organizations representing County permittees filed a Notice of Impasse and a Request For Fact Finding with the Los Angeles County Employee Relations Commission, pursuant to Section 13 of the Los Angeles County Employee Relations Ordinance.
 

 “11. Representatives of the County and of the petitioning organizations selected a fact finder, and hearings were held on January 28 and 29, 1974. CAPE, PPOA, and the other petitioning organizations, as well as the County of Los Angeles, were represented at the hearings, presented witnesses and exhibits, and cross-examined opposition witnesses. On or about April 12, 1974, the fact finder issued his Report and Recommendations of Fact-Finder, which was rejected by Respondent County of Los Angeles.”
 

 
 *42
 
 County continues to compensate its employees in accordance with section 60.4 of its Administrative Code.
 

 The judgment appealed from directs County to develop a formula for reimbursement of the actual necessary expenditures for transportation by employees required to use their automobiles on County business as a condition of their employment, and to reimburse County employees represented by respondents for their “actual necessary expenditures” for transportation on County business, retroactive to January 1, 1974, with interest thereon at the legal rate.
 

 Based on evidence presented in the course of a two-day trial,
 
 [2]
 
 the court found:
 

 “13. The costs of transportation associated with the ownership and operation of an automobile consist of the variable costs and the fixed costs. The fixed costs include the costs of annual depreciation, registration, fire and theft insurance, collision insurance, property damage and public liability insurance, medical insurance, uninsured motorist insurance, and interest on capital investment. The variable costs include the cost of gasoline and oil, maintenance, and tires.
 

 “14. The reimbursement method applied by respondents from and after Dec. 31, 1971, sought to reimburse both the fixed and the variable costs of transportation on a per-mile basis, and reimbursement amounts were based on a new intermediate size automobile having a projected useful life of five years, with an eight cylinder engine,'power steering, power brakes, automatic transmission, radio, and heater.
 

 “15. The respondents, in calculating the fixed costs, failed to include a cost factor for property damage and public liability insurance and interest on capital investment.
 

 “16. The respondents’ reimbursement method of reimbursing both the fixed and the variable transportation costs on a per-mile basis necessarily leads to the under-reimbursement of substantial numbers of County employee drivers.
 

 
 *43
 
 “17. One reimbursement method which would avoid such under-reimbursement is the method of apportioning fixed costs on the basis of the time during which the automobile is required to be available for use in County business rather than apportioning fixed costs on a mileage basis.”
 

 Where a county charter requires that a board of supervisors carry out a particular act, and pursuant to that charter provision the board enacts an implementing ordinance, the board’s act is a legislative action.
 
 (Collins
 
 v.
 
 City & Co. of S. F.
 
 (1952) 112 Cal.App.2d 719, 729, 730 [247 P.2d 362];
 
 Anderson
 
 v.
 
 Board of Supervisors
 
 (1964) 229 Cal.App.2d 796, 798 [40 Cal.Rptr. 541];
 
 City Council
 
 v.
 
 Superior Court
 
 (1960) 179 Cal.App.2d 389, 393 [3 Cal.Rptr. 796].)
 

 Once exercised, legislative discretion is, absent special circumstances, not subject to judicial control and supervision.
 

 “It should be kept in mind that the board of supervisors, as the legislative branch of government in the county, is entitled to the exercise of discretion in judging facts which constitute the basis of its resolutions and ordinances. . . .”
 
 (Cosgrove
 
 v.
 
 County of Sacramento
 
 (1967) 252 Cal.App.2d 45, 50 [59 Cal.Rptr. 919].)
 

 “Any decision made in the exercise of that [wage-setting, i.e., legislative] authority would involve the use of discretion. As a consequence, the steps to be undertaken, the method selected, and the decision reached in the course thereof, in the absence of fraudulent of arbitrary action, would not be interfered with by the courts.” (San
 
 Bernardino Fire & Police Protective League
 
 v.
 
 City of San Bernardino
 
 (1962) 199 Cal.App.2d 401, 411 [18 Cal.Rptr. 757].)
 

 County’s decision to reimburse the actual necessary expenses of its employees in terms of section 60.4 was neither arbitrary nor unfair.
 

 In connection with the negotiations between employee organizations and the County, the chief administrative officer conducted a study in 1973 to determine whether additional compensation to those using privately owned vehicles on County business was warranted. The resulting study analyzed data from County drivers, new car dealers, garages, retail stores and other sources, in order to determine the cost of
 
 *44
 
 driving the applicable standard car. The study concluded that the cost of operating such a car, calculated on a per-mile basis, was 13.6 cents. The existing mileage rate set out in section 60.4 was 14 cents per mile. The study compared the County’s mileage rate with other public agencies and found that it was the highest of the agencies surveyed, all of which used a mileage rate formula, rather than allowing a flat amount for fixed cost, as contended for by the employee organizations.
 

 During the negotiations between employee organizations and the County in 1975, the chief administrative officer again conducted a survey, and analyzed the data resulting from that survey. On the basis of the survey, and other information, a report was prepared showing the chief administrative officer’s findings of the cost of driving the applicable standard car. That report showed the per mile cost of operating the standard car was 11 cents for the first 1,200 miles, and 6 cents for anything in excess of 1,200 miles per month.
 

 It may be noted in passing that neither of the witnesses testified to, nor does anything in the record show, that
 
 other fixed costs
 
 and variables of certain or illusive money value are inherent in the ownership and/or operation of a motor vehicle. To mention a few that readily come to mind: space in a home for a garage; parking away from home; fines for violations of law; the frequency of washing and polishing a vehicle. In addition, the amount invested in and the length of time a vehicle will be kept varies with the affluence and/or the taste and ego of the employee involved as does the method elected by each for the payment thereof, all of which inevitably impels a frugal employee to either pay for the excesses of another or to profit from the average per mile price arrived at or to determine at long last to meet the standard of the most expensive operation of the most extravagant.
 

 To resolve the issue at bench it is important to recognize a significant distinction in article XII, section 53, which defines the legislative power of the board. This section mandates reimbursement for “actual and necessary expenditures, the hiring of conveyances, and for lodging and meals” but mandates board to “ ... fix a maximum price to be paid for ... lodging and meals,...”
 

 Although there are pragmatic reasons for the distinction, we do not discuss them. This latter proviso is not before the court.
 

 
 *45
 
 It is clear from section 53 that no employee of County “is compelled to travel in the performance of . . . duty” in a conveyance self-owned or possessed. Thus, it is also clear that a County employee “compelled to travel” can suffer no loss, nor can such employee make a gain or enjoy the added convenience or inconvenience, as the case may be, if permitted to use a self-owned vehicle.
 

 The arrangement between County and CAPE appears to be consensual but there is nothing in the record to show that County may compel an employee to own a conveyance which the employee is then required to use for travel on county business. Further, whether an employee does or does not own a vehicle, such employee, when compelled to travel, may elect to use it or to travel by public conveyance.
 

 Clearly, County would or should not tolerate the option of using employee-owned transportation if the cost thereof is in excess of that which County would be required to pay for public transportation. Of course, it is also true that with few exceptions, employees will not use their own conveyances at a loss.
 

 We are sensitive to the fact, that although not empowered by section 53 to maximize the cost of transportation, County, when it fixes a per mile cost of use of employee-owned vehicles, has in fact fixed a maximum—but as pointed out, a decisive distinction between the cost of transportation and that for food and lodging is that, with the former, an employee may decline to use his own vehicle and thus necessarily reject the rate of compensation fixed by County.
 

 When the multi-faceted factors, the totality of which are not embraced in the record or this opinion, are pragmatically considered in connection with the policy of whether partial use by an employee of an employee’s vehicle for an employer’s use (which unquestionably varies with each employee) fairly compensates the employee, it becomes apparent that the fixing of a fair price rests not alone on mathematics.
 

 Given such a pragmatic background and a policy of use accepted but subject to rejection by employees, it is clear to us that courts should not substitute their opinions for an informed decision knowledgeably made within the ambit of a rational discretion exercised by a legislative body on a subject definitely within its legal authority.
 

 
 *46
 
 There is no evidence before us that the legislative body here involved did not accord respondents a full and fair-hearing.
 

 In view of our disposition of this appeal, it is not necessary to consider appellants’ remaining contentions.
 

 The judgment is reversed.
 

 Fleming, J., and Beach, J., concurred.
 

 A petition for a rehearing was denied November 3, 1977, and respondents’ petition for a hearing by the Supreme Court was denied December 8, 1977. Bird, C. J., and Newman, J., were of the opinion that the petition should be granted.
 

 [1]
 

 Los Angeles County Administrative Code, section 60.4 implements section 53 of the charter and provides: “A permittee shall be paid the following rates for the use of a privately owned motor vehicle other than a motorcycle or a motorscooter, for the monthly period established by
 
 *41
 
 the Auditor-Controller for the following mileage: “(a) Fourteen (14) cents per mile for the first three hundred miles in such monthly period. “(b) Thirteen (13) cents per mile for the next five hundred fifty miles in such monthly period. “(c) Seven (7) cents per mile for each additional mile above eight hundred fifty miles in such monthly period. “If total mileage reimbursement claimed within such monthly period is less than $10.00, the permittee, unless a member of a commission or advisory board of the County, shall receive $10.00 in lieu thereof.”
 

 [2]
 

 In addition to the testimony of two witnesses, the trial court considered a comprehensive study prepared by a consulting firm specializing in matters connected with business travel and living expense management. Testifying for respondents was the vice president of the consulting firm and, for appellant, a County budget analyst.