[Civ. No. 41245. First Dist., Div. Two. Jan. 26, 1978.]

COMMITTEE FOR SEWER REFERENDUM et al.,
Plaintiffs and Appellants, v.
HUMBOLDT BAY WASTEWATER AUTHORITY,
Defendant and Appellant.

118

---

## COUNSEL

Orrick, Herrington, Rowley & Sutcliffe, Stokes, Steeves, Calligan & Warren and Michael D. Calligan for Defendant and Appellant.

Eitzen, Schaub & Diehl and Lawrence O. Eitzen for Plaintiffs and Appellants.

## OPINION

**TAYLOR, P. J.**—These appeals[1] raise the question of whether there was sufficient substantial compliance with the referendum procedures of the Government Code. As we have concluded that there was substantial compliance as to both the time and place of filing, the portion of the judgment in favor of the Committee on the first cause of action must be affirmed.

The basic facts are not in dispute. The Wastewater Authority is a governmental entity created by a joint powers agreement, dated January 8, 1975, by the City of Eureka, the City of Arcata, the County of Humboldt, the Humboldt Community Services District, and the McKinleyville Community Services District, pursuant to the joint exercise of powers law, Government Code section 6500 et seq. The Wastewater Authority was created to solve the water quality problems of the mid-Humboldt County area by constructing a project to collect, treat, and dispose of wastewater. On March 20, 1975, the California Regional Water Quality Control Board, North Coast Region, (R.W.Q.C.B.), adopted its water quality control plan (Plan) for the north coastal basin. The Plan required that Wastewater Authority construct a regional facility to provide secondary treatment of waste and to eliminate discharges to Humboldt Bay by 1977, or as soon thereafter as practicable, as determined by the R.W.Q.C.B. Accordingly, on September 8, 1976, the Wastewater Authority adopted its resolution 76-9-30 that authorized the issuance of up to $12 million in revenue bonds under the Revenue Bond Law of 1941. The resolution provided that it would take effect 30 days from the date of its final passage, pursuant to former Elections Code section 3751.

As the R.W.Q.C.B. had determined that immediate construction of the project was necessary for compliance with the Plan and the prevention of

---

[1]Humboldt Bay Wastewater Authority (Wastewater Authority) appeals from that portion of a judgment on the first cause of action in favor of the Committee for Sewer Referendum and Danny Ihara (Committee) decreeing that there had been sufficient substantial compliance with the applicable laws to permit Committee to file its referendum petition at the office of the county clerk, instead of the office of the Wastewater Authority. Wastewater Authority contends that since the strict referendum procedures were not followed, its sewer ordinance is valid pursuant to the exception to normal election procedures created by Government Code section 54307.1. The Committee cross-appeals from the portion of the judgment sustaining a demurrer to its second, third and fourth causes of action without leave to amend, contending that the referendum petitions also were timely filed.

pollution, the Wastewater Authority determined that the bonds would be subject to the referendum procedures of Government Code section 54307.1, subdivision (b).[2]

On September 30, 1976, the Committee was organized, decided to proceed with a referendum petition campaign, and during the following week circulated petitions. Although the Committee consulted with, and was advised by, attorneys as to the proper referendum procedures, the Committee apparently never inquired about the proper place for the filing of the petitions.

The Committee informed the Humboldt County Clerk (County Clerk) that it planned to file the petition with his office and asked whether the proper place of filing was the elections department or the courthouse. The County Clerk did not know where the petition should be filed. The Committee made no further inquiry and filed the petition with the County Clerk at the elections department office shortly before the 5 p.m. deadline on October 7, 1976. The County Clerk indicated that it would take about 30 days to certify the petitions.

On that afternoon, the Wastewater Authority's secretary and its general manager were in their office wondering whether or not the Committee's petition was to be filed. As the 5 p.m. filing deadline approached, no petition was being presented at the Wastewater Authority office in the Cal-Trans Building. The general manager had heard that the Committee intended to file at the elections department office and

[2]The statute provides so far as pertinent: "(b) If compliance with a water quality control plan, adopted pursuant to Division 7 (commencing with Section 13000) of the Water Code, requires the construction of facilities for the collection, treatment or disposal of sewage, waste or storm water, and if the appropriate regional water quality control board, in a cease and desist order or by other action of the board, finds or determines that immediate action for the planning and construction of such facilities is urgently needed for the compliance with such plan and the prevention of pollution, the election procedures of Article 3 (commencing with Section 54380) of this chapter shall not be applicable, but undertaking the improvement shall be subject to referendum on the issuance of bonds. The resolution of the local agency or entity authorizing the issuance of bonds pursuant to this chapter shall be subject to referendum within the combined territory of all the agencies which, pursuant to Chapter 5 (commencing with Section 6500) of Division 7 of Title 1, have created such local agency or entity. Referendum procedures shall, as nearly as practicable, be those specified in Section 6547.2.

"For the purposes of Section 6547.2, however, 'local agency' shall mean the local agency or entity authorizing the issuance of bonds. The electors of such local agency for the purposes of such section shall be the electors residing within the boundaries of the local agency or entity who would be qualified to vote for candidates for Governor; . . ."

decided to send the secretary to the elections department office. The secretary left the Wastewater Authority office, traveled to the elections department office, and arrived there at approximately 4:50 p.m. The elections department office is in the same building as the Humboldt County right-of-way office, and the two offices share a common foyer. The secretary proceeded to the right-of-way office and from there observed a member of the Committee take the petitions into the elections department office.

The secretary then returned to the Wastewater Authority office about 5:10 p.m. and advised the general manager that it appeared that a petition had been filed with the County Clerk. At that time, the secretary did not know whether the proper place to file the petition was the Wastewater Authority office or the County Clerk's office, as he had never considered the question or heard it discussed; the general manager also had never considered the question or heard it discussed.

The following day, October 8, 1976, a Committee member brought a letter to the Wastewater Authority office, stating that the petition had been filed with the County Clerk on October 7, the day before. The general manager telephoned the Wastewater Authority's bond counsel in San Francisco, Nathan Rowley, and read him the letter. Shortly thereafter, Rowley called back and advised the general manager that the Committee's petition had been filed in the wrong office.

Thereafter, the County Clerk informed the Committee that the petition should have been filed with the Wastewater Authority. The petitions were retrieved from the elections department office and taken to the Wastewater Authority's office that afternoon. After again telephoning Rowley, the Wastewater Authority's secretary and general manager refused to accept the petitions because the prior day, October 7, was the last day for presentation of referendum petitions to the Wastewater Authority. The petitions were then returned to the County Clerk's elections department office for safekeeping.

Subsequently, the Committee filed its verified complaint in the instant action for reverse statutory validation, pursuant to Code of Civil Procedure section 863, and set forth four causes of action: the first alleged that there had been a substantial compliance with the time and place of filing; the second, that the referendum petition had been timely filed; the third, that the Wastewater Authority was estopped by the

County Clerk's acceptance of the petitions from denying the timeliness and appropriate place of filing of the petitions; and the fourth, that in any event, the bond resolution was invalid because no approval had been obtained by the Wastewater Authority from each of its member entities, as required by Government Code section 6547.1.

The trial court sustained the Wastewater Authority's general demurrer to the Committee's second, third and fourth causes of action, but ruled in favor of the Committee on the first cause of action. The judgment held that the Committee's petitions were properly presented to the Wastewater Authority and, therefore, resolution No. 76-9-30 was invalid unless and until proper referendum procedures are followed.

In this state, the right of referendum is a preferred right that the people of this state have retained and which cannot be limited by a court or elected body (*Associated Home Builders etc., Inc.* v. *City of Livermore,* 18 Cal.3d 582 [135 Cal.Rptr. 41, 557 P.2d 473]; *Citizens Against a New Jail* v. *Board of Supervisors,* 63 Cal.App.3d 559, 563 [134 Cal.Rptr. 36]). The referendum statutes, therefore, are liberally construed.

A pertinent analogy is presented by *Benson* v. *Superior Court,* 214 Cal.App.2d 551 [29 Cal.Rptr. 760], where the court held that the attachment of a written list of the allegedly illegal voters in an election contest and mailing met requirement of delivery at least three days before trial of Elections Code section 20052, which required personal delivery. This court (Division One) ruled that public policy favored the determination of election contests on the merits and that the purpose of Elections Code section 20052 (i.e., giving timely notice to the contestee so he could examine the list and prepare a defense) had been met.

In *Knowlton* v. *Hezmalhalch,* 32 Cal.App.2d 419 [89 P.2d 1107], the statutory language required presentation to a legislative body but the facts indicated that no presentation had been made. The court, in applying the rule of liberal construction, stated at pages 429-430: "We are firmly of the opinion that the filing of the referendum petition with the city clerk, who in fact is the clerk of the legislative body, constitutes the act *of presenting it to the legislative body.* If it were otherwise, any city council, maliciously conspiring to defeat the object and purpose of the referendum law, could adopt a legislative act repugnant to the interests of the public, and purposely adjourn for a longer period than 30 days. In such case there would be no legislative body in session with whom

referendum petitions could be filed or to whom they might be presented. Under the circumstances, the construction given this act by respondent would become palpably fallacious and justice would become but a fleeting fancy."

We think the above quoted language is particularly applicable here.

■ For the instant bond issue, the Wastewater Authority utilized Government Code section 54307.1, enacted in 1971, which creates an exception to the general requirement of elective approval of the majority of voters normally required pursuant to Government Code section 54386. Pursuant to subdivision (b) of Government Code section 54307.1, so far as pertinent, the referendum procedures shall, as nearly as practicable, be those specified in Government Code section 6547.2. Government Code, section 6547.2, in turn, incorporates by reference the referendum procedures applicable to county ordinances of former Elections Code section 3750 et seq. Pursuant to former Elections Code section 3750, so far as here pertinent, a referendum for a county ordinance must be presented to the county board of supervisors; pursuant to former Elections Code section 3751, the resolution here in issue became effective "30 days from the date of final passage."

The uncontroverted evidence indicates that here the Committee sought the advice of the County Clerk and at his direction filed its petition in the elections office. A member of the Committee had talked to the general manager about the petitions after September 30. The general manager also knew that the petitions were to be filed at the elections department of the County Clerk's office, and sent the secretary there to observe the filing. Until the October 8, 1976 consultations with their counsel, neither the general manager nor the secretary of the Wastewater Authority knew or had heard of the question of the proper place to file a referendum petition pursuant to Government Code section 54307.1. Given the interlocking and cross-referenced statutory provisions discussed above, as well as the ignorance of all county officials who could have reasonably been expected to know the proper procedures, no citizens group like the Committee could reasonably be expected to come to the correct conclusion as to which office under the instant circumstances was most analogous to the board of supervisors specified for county ordinance referendum petitions by Elections Code section 3752. The following day, when all concerned learned that the petitions had been filed in the wrong place, the Committee could no longer timely

file the petitions with the Wastewater Authority. The Wastewater Authority concedes that if the petitions had been filed with its secretary or general manager, rather than with the County Clerk, there would have been timely compliance with Government Code section 54307.1, and a referendum would be required prior to the construction of the project.

We think that under these circumstances the trial court properly concluded that the petitions were properly presented to the Wastewater Authority resulting in the invalidity of resolution No. 76-9-30.

The Wastewater Authority argues for strict compliance with the referendum statutes and relies on *Richmond* v. *Shipman,* 63 Cal.App.3d 340 [133 Cal.Rptr. 742],[3] and *Edward Rose of Ohio, Inc.* v. *McLaughlin* (1970) 22 Ohio App.2d 190 [259 N.E.2d 754],[4] neither of which is apposite here. In view of our conclusion, it is not necessary to reach the issues raised by the Committee's cross-appeal.

We are aware that our decision may result in some inconvenience and inefficiency as far as the Wastewater Authority is concerned, as this matter was given preference on our calendar so that bids could be let this spring. These considerations were answered by this court (Division Three) in *Citizens Against a New Jail* v. *Board of Supervisors, supra,* 63 Cal.App.3d, at page 563: "Under our system, government is by the people. Through the initiative and referendum provisions of our Constitution and statutes, the people of California have reserved to themselves the ultimate legislative power. Neither an elected board nor a court has the power to limit that reserved right. The system has worked well over the years, and whatever its defects in 'efficiency' it has counterbalancing advantages which strongly support it. Whatever our view as to factors of cost and practicality, the decision must be left to the voter-taxpayers, to whom we must and do commit it."

On January 3, 1978, the Committee filed a motion[5] for attorney fees based on the private attorney general theory of *Serrano* v. *Priest,* 20

[3]*Richmond* dealt with the after-hours filing of a complaint at the home of the judge instead of the county clerk. In affirming the summary judgment dismissing the action as barred by the statute of limitations, this court (Division Four) held that the acceptance of complaints for filing is not a function a judge may perform away from his courtroom.

[4]The Ohio statute specifically required that a referendum petition be filed with the city auditor. Pursuant to Ohio law, the Ohio court found that the statutory requirements were mandatory and held that a filing with the clerk of the city council was not in compliance.

[5]For reasons of judicial economy and efficiency, we have consolidated the motion with the appeal on the merits.

Cal.3d 25, 44-47 [141 Cal.Rptr. 315, 569 P.2d 1303], decided on October 4, 1977, after the filing of the closing brief and newly enacted Code of Civil Procedure section 1021.5 (Stats. 1977, ch. 1197, effective Jan. 1, 1978).[6] As the Wastewater Authority points out in opposition to the motion, since attorney fees were not sought below, as was the case in *Serrano, supra,* 20 Cal.3d 25, the Committee is precluded from raising the issue for the first time on appeal. However, this disposition does not apply to the attorney fees on this appeal. As to these, the motion was timely. We, therefore, confer jurisdiction on the trial court to determine the attorney fees on appeal (*American City Bank* v. *Zetlen,* 272 Cal.App.2d 65, 68-70 [76 Cal.Rptr. 898]). ██ The trial court is directed to determine whether the Committee meets either the constitutional interest, substantial benefit and necessity requirements of *Serrano, supra,* or the standards of Code of Civil Procedure section 1021.5, subdivisions (a) and (b), quoted above.[7] If so, the court is also directed to determine the appropriate amount of attorney fees on this appeal.

The judgment based on the first cause of action is affirmed and the trial court is directed to rule on the attorney fees on appeal as indicated above, and to consider additional evidence, if necessary. Committee is awarded costs on appeal.

Kane, J., and Rouse, J., concurred.

---

[6]The statute provides, so far as here pertinent: "SECTION 1. Section 1021.5 is added to the Code of Civil Procedure, to read: 1021.5. Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

[7]Where attorney fees are awarded pursuant to a statute rather than by contract, they are costs and can be awarded even though there was no special demand for attorney fees in the complaint (*T.E.D. Bearing Co.* v. *Walter E. Heller & Co.,* 38 Cal.App.3d 59, 62 [112 Cal.Rptr. 910]).