[Civ. No. 44096. First Dist., Div. Two. Apr. 9, 1980.]

JOHN LUCCHESI et al., Plaintiffs and Appellants, v.
CITY OF SAN JOSE et al., Defendants and Appellants.

**COUNSEL**

Jacqueline W. Stewart and Wylie, Blunt & Mc Bride for Plaintiffs and Appellants.

Robert J. Logan, City Attorney, and Willie Lott, Jr., Deputy City Attorney, for Defendants and Appellants.

## OPINION

TAYLOR, P. J.—The City of San Jose (City) appeals[1] from a judgment granting a writ of prohibition and preliminary injunction against the implementation of San Jose Municipal Code (Code) section 2005.5(d), as amended by Ordinance No. 18272 (Ordinance). Lucchesi, Maciel et al. (collectively Lucchesi), cross-appeal from the portion of the judgment denying them attorney fees. The City contends that Code section 2005.5(d) does not conflict with section 1100 of the San Jose City Charter (Charter) and that the court erred in concluding that the Ordinance was arbitrary and capricious.[2] The only question on the cross-appeal is whether attorney fees should have been awarded and if so, on what theory. For the reasons set forth below, we have concluded that the judgment must be affirmed, except as to the attorney fees.

The court found the pertinent facts as follows: Lucchesi were current applicants for the position of City firefighter. The City is a chartered municipal corporation existing under the laws of the State of California. Charter section 1100 provides: "*All appointments and promotions* to positions in the Classified Services *shall be made on the basis of merit and fitness,* demonstrated by examination and other evidence of competence, in accordance with Civil Service Rules adopted in the manner provided in this Chapter." (Italics added.) Effective October

---

[1]Also named as individual defendants were the mayor, members of the city council, the city manager, the personnel director and several Does.

[2]A few days before oral argument, the City sought dismissal of its appeal pursuant to California Rules of Court, rule 38. A dismissal of an appeal is not a matter of right if the dismissal will adversely affect the rights of a cross-appellant (cf. *DeGarmo* v. *Goldman* (1942) 19 Cal.2d 755, 768-769 [123 P.2d 1]). Further, a voluntary dismissal will ordinarily not be permitted where the public is interested (*Memorial Hosp. of So. Cal.* v. *State Health Planning Council* (1972) 28 Cal.App.3d 167, 175-176 [104 Cal.Rptr. 492]). The issue raised by the City's appeal is a question of first impression and of great public interest that is likely to arise and again be litigated and appealed. Neither party appeared at oral argument. After the matter was submitted, at oral argument, Lucchesi sought dismissal of their cross-appeal. Although the matter is now subject to dismissal, we proceed to render this opinion because the issue presented is of sufficient interest and importance (*United Farm Workers of America* v. *Superior Court* (1976) 16 Cal.3d 499 [128 Cal.Rptr. 209, 546 P.2d 713]; *Green* v. *Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]).

19, 1976, the city council adopted the Ordinance, which read as follows: *"Qualified permanent employees may take an open competitive examination on a promotional basis* but must attain a final examination grade of at least 80% before Veterans' preference to qualify for promotional eligible list. If the employee scores less than 80% but is at least 70%, his name will be placed on the open eligible list." (Italics added.)

In November 1976, the City announced an open competition examination for openings for entry level firefighter with approximately 44 positions to be filled in the next two years. All applicants were required to file an application, meet the minimum qualifications for the position, pass a written and physical agility test and then take an oral board examination. Thereafter, the applicants are ranked on the eligibility lists. Lucchesi, who were not City employees, applied for the firefighter positions in November 1976, met the minimum qualifications for the position, successfully completed the written and physical agility tests, and were awaiting the oral board examination. Also among the applicants for the same firefighter positions were a number of City employees. The City intended to apply the Ordinance to establish the eligibility lists for the firefighter positions as follows: City employees are allowed to take the open competitive firefighter examination on a promotional basis. All City employees who achieved a score of 80 percent, or higher, on the examination would be placed on the "promotional eligible" list. All non-City employees who had scores higher than 70 percent and City employees who had scores between 70-80 percent, would be placed on the "open competitive eligible" list. As positions became available, they were to be filled by first exhausting the "promotional list" and then utilizing the "open competitive" list.

 The court concluded that the Ordinance was in conflict with the merit provision of the City Charter and entered its judgment.

The City first argues that the Ordinance does not conflict with section 1100 of the Charter as it merely attempted to define "other evidence of competence." The City's Charter contains "home rule" provisions (Cal. Const., art. XI, § 5; *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 60 [81 Cal.Rptr. 465, 460 P.2d 137]). Thus, the City has complete power over "municipal affairs" subject only to clear and explicit limitations and restrictions contained in its own Charter.

Employment, promotion and management of City employees is a municipal affair to be controlled by the provisions of a city charter and by the administrative discretion of city officials (Cal. Const., art. XI, § 5, subd. (b); *Livingston* v. *MacGillivray* (1934) 1 Cal.2d 546 [36 P.2d 622]; *O'Sullivan* v. *City & County of S. F.* (1956) 145 Cal.App.2d 415 [302 P.2d 688]). Article XI, section 5 of the state Constitution vests in a chartered city the plenary power to provide in its charter for the method of appointment and qualifications of its employees.

The Ordinance here in issue suffers from two legal impediments. ▮ Ordinances passed pursuant to the plenary authority of article XI, section 5 of the state Constitution are invalid if they conflict with a city's charter (*South Pasadena* v. *Terminal Ry. Co.* (1895) 109 Cal. 315 [41 P. 1093]; *Simons* v. *City of Los Angeles* (1977) 72 Cal.App.3d 924, 935 [140 Cal.Rptr. 484]; *Brown* v. *City of Berkeley* (1976) 57 Cal.App.3d 223, 230 [129 Cal.Rptr. 1]; *McDonald's Systems of California, Inc.* v. *Board of Permit Appeals* (1975) 44 Cal.App.3d 525, 536 [119 Cal.Rptr. 26]; *Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 13 [309 P.2d 481]; *Marculescu* v. *City Planning Com.* (1935) 7 Cal. App.2d 371, 373 [46 P.2d 308]). An ordinance can no more change or limit the effect of a charter than a statute can modify or supersede a provision of the state Constitution (*Simons, Brown, McDonald's Systems, Marculescu,* all *supra*).

▮ Pursuant to constitutional authority, article XI of the City Charter entitled "Civil Service System" provides a comprehensive general plan for the organization and administration of the City's personnel system. As indicated above, section 1100 of that article provides, in relevant part, that all appointments to positions in the "classified service" must be made on the basis of *"merit and fitness, demonstrated by examination and other evidence of competence,* in accordance with Civil Service rules adopted in the manner provided in this Charter" (italics added). The City contends that the reference to "other evidence of competence" allows the implementation of the Ordinance without contravening the merit principle of civil service employment. We cannot agree.

For its construction of "other evidence of competence" the City relies on *Sojka* v. *City of Pasadena* (1971) 15 Cal.App.3d 965 [93 Cal.Rptr. 548], and Government Code section 18951.[3] In *Sojka*, the court af-

---

[3]"The board and each state agency and employee shall encourage economy and efficiency in and devotion to state service by encouraging promotional advancement of

firmed the city's appointment of the fifth place applicant in violation of a rule requiring that the position was to be filled by the persons who were first, second or third on the list. However, the court carefully restricted its holding and the ensuing "harsh result" to the particular facts, i.e., a finding that the position was an assignment or transfer and not a promotion and the failure of the plaintiffs to prove that the rule of three applied to the particular position. The second paragraph of Government Code section 18951 has never been litigated. In any event, by its terms, the provision applies only to open nonpromotional examinations and is not apposite here.

In accordance with article XI of its Charter, the City and its officials are required to adopt rules for employee selection that assure appointments and promotions are made on the basis of merit and fitness. Although merit and fitness need not be demonstrated exclusively by examination, any other method used must bear some rational relation to these qualities. As the court below noted in its well-reasoned interim order, the Ordinance takes into account only the status of employment rather than performance. No consideration is given to a City employee's performance record, attendance record, quality of work, or other substantive factors, in order to be placed on the preferred "promotional eligible" list. Thus, a City employee with an extensive disciplinary record, poor work record, but a written test score of 80 percent or better, would be placed on the promotion eligible list and offered an available firefighter position before a non-City employee who scores 100 percent and who is on the "open competitive" list.

Further, in order to be on the preferred "promotional" list, the City employee's prior employment history with the City does not have to include experience related to the position sought. City employment, in and of itself, is not evidence of competence. No evidence to the contrary was introduced by the City. For example, a City employee with no experience in a field related to the position sought, is not more competent than a non-City employee with 25 years of experience in a related field. Experience as a secretary, gardener or custodian within the City for

employees showing willingness and ability to perform efficiently services assigned them, and every person in state service shall be permitted to advance according to merit and ability.

"*In an examination held on an open, nonpromotional basis* under the provisions of Section 18950, a competitor who has permanent civil service status, or who has a mandatory right to reinstatement to a position with permanent civil service status, and who attains the passing mark established for the examination, shall have three credits added to his earned score. Such credits shall be known as career credits." (Italics added.)

even a considerable period of time is not more indicative of competence as a firefighter with the City than actual experience as a firefighter in another jurisdiction.

The City next argues that the Ordinance was enacted to provide permanent City employees with greater opportunities for promotion and career development. No doubt, this is a laudable objective. However, it must be achieved by reasonable means.

■ If a rule providing credits for efficiency and seniority is reasonable and does not discriminate unreasonably between qualified applicants, the discretion to implement that rule will not be interfered with unless a clear abuse of discretion is shown or there has been arbitrary, fraudulent or capricious conduct (*Terry* v. *Civil Service Commission* (1952) 108 Cal.App.2d 861 [240 P.2d 691]; *Almassy* v. *L.A. County Civil Service Com.* (1949) 34 Cal.2d 387 [210 P.2d 503]; *California Assn. of Professional Employees* v. *County of Los Angeles* (1977) 74 Cal.App.3d 38 [141 Cal.Rptr. 290]).

■ Here, by adopting the Ordinance, the City arbitrarily assigned a new and arbitrary meaning to the term "promotion."[4] As used in personnel matters, "promotion" implies a line of progression or movement upward in related areas. Webster's Seventh New Collegiate Dictionary defines the term as "The act or fact of being raised in position or rank, the act of furthering the growth or development of something." Inherent in the definition is the increase of proficiency in a given area of employment; the individual becomes capable of assuming greater responsibility and performing with greater skill. An employee's performance in a position within a line of progression is presumably an indication of that employee's ability to perform in positions up the promotional ladder. Usually positions in a line of progression are in related fields and require similar, but more advanced skills. For example, performance as a police officer is a reasonable measure of performance potential as a police sergeant, but not necessarily a measure of an individual's ability to perform as a firefighter.

Further, the "entry level" nature of the firefighter positions here in issue indicates their threshold nature. To use the term "promotion" to

---

[4]In fact, the process envisioned by the Ordinance is in the nature of a transfer or assignment.

mean movement across entry level positions for City employees is contrary to the customary usage of the term and common sense.[5]

As the Ordinance unreasonably discriminates between City employee-applicants who score over 80 percent on the competitive examination and all non-City employee-applicants who also score greater than 80 percent, the former compete on a promotional and preferred basis, while the latter, who may be equally or better qualified, compete on an entry-level basis. Thus, the trial court properly concluded that the Ordinance was based on an unreasonable classification.

While local government agencies in charge of civil service may make reasonable regulations for the purpose of securing qualified persons (see *Acton* v. *Henderson, supra*, 150 Cal.App.2d at p. 20), they may not legislate in violation of either the federal or state Constitutions (*Miller* v. *City of Sacramento* (1977) 66 Cal.App.3d 863 [136 Cal.Rptr. 315]). Equal protection of the laws, guaranteed by both the federal and state Constitutions, does not forbid reasonable classifications for the purpose of municipal legislation (*State Board* v. *Young's Market Co.* (1936) 299 U.S. 59 [81 L.Ed. 38, 57 S.Ct. 77]; *Meredith* v. *Workers' Comp. Appeals Bd.* (1977) 19 Cal.3d 777, 781 [140 Cal.Rptr. 314, 567 P.2d 746]; *City of Los Angeles* v. *City of Artesia* (1977) 73 Cal.App.3d 450, 455 [140 Cal.Rptr. 684]). A municipality has a right to prefer the best qualified persons in reaching its hiring or promotional decisions. The equal protection guarantees prohibit only arbitrary discrimination (*Parr* v. *Municipal Court* (1971) 3 Cal.3d 861, 864 [92 Cal.Rptr. 153, 479 P.2d 353]; *Blumenthal* v. *Board of Medical Examiners* (1962) 57 Cal.2d 228 [18 Cal.Rptr. 501, 368 P.2d 101]) unrelated to qualifications.

A reasonable basis of classification is required for an ordinance that results in a classification embracing and affecting equally all persons similarly situated (*Kelly* v. *City of San Diego* (1944) 63 Cal.App.2d 638 [147 P.2d 127]; see also *McLaughlin* v. *Florida* (1964) 379 U.S. 184 [13 L.Ed.2d 222, 85 S.Ct. 283]). Arbitrary rules of convenience, which discriminate against qualified applicants, constitute a denial of equal protection (*Terry* v. *Civil Service Commission, supra*, 108 Cal. App.2d, p. 868). Both the state and federal equal protection clauses clearly prohibit the state or any governmental entity from arbitrarily

---

[5]We note that our conclusion does not necessarily require the City to refrain from holding all closed promotional examinations.

discriminating against any class of individuals in employment decisions (*Gay Law Students Assn.* v. *Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458 [156 Cal.Rptr. 14, 595 P.2d 592]; *Purdy & Fitzpatrick* v. *State of California* (1969) 71 Cal.2d 566, 578 [79 Cal.Rptr. 77, 456 P.2d 645, 38 A.L.R.3d 1194]; see also *Kotch* v. *Pilot Comm'rs.* (1947) 330 U.S. 552, 556 [91 L.Ed. 1093, 1096-1097, 67 S.Ct. 910]).[6]

■ Although both the Fourteenth Amendment of the United States Constitution and the equal protection clause of the California Constitution accord any person the equal protection of the laws in plain and unequivocal language and without qualification[7] (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 596, fn. 11 [96 Cal.Rptr. 601, 487 P.2d 1241]; *McGlothlen* v. *Department of Motor Vehicles* (1977) 71 Cal.App.3d 1005 [140 Cal.Rptr. 168]), we confine our discussion to the equal protection provisions of the state Constitution (art. I, § 7; art. IV, § 16).[8]

---

[6]The court noted that some challenges to legislative classifications, such as preference for veterans in public employment, have been unsuccessful (see *Cook* v. *Mason* (1929) 103 Cal.App. 6, 11 [283 P. 891]; *Personnel Adm'r of Mass.* v. *Feeney* (1979) 442 U.S. 256 [60 L.Ed.2d 870, 99 S.Ct. 2282]). However, even in the case of veterans' preferences, the courts will not allow an absolute preference (see, e.g., *McNamara* v. *Director of Civil Service* (1953) 330 Mass. 22 [110 N.E.2d 840, 843]). A statute requiring the promotion or hiring of veterans before all others was invalid where the state Constitution provided for appointments made according to merit and fitness (*Barthelmess* v. *Cukor* (1921) 231 N.Y. 435 [132 N.E. 140, 16 A.L.R. 1404]). In determining the validity of the preference, there must be some reasonable relation between the basis of the preference and the objective to be obtained (*Commonwealth* v. *O'Neill* (1951) 368 Pa. 369 [83 A.2d 382]).

[7]Section 1 of the Fourteenth Amendment provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; *nor shall any State* deprive any person of life, liberty, or property, without due process of law; nor *deny to any person* within its jurisdiction *the equal protection of the laws*" *(italics added).*

*California Constitution, article I, section 7, sets out that "(a) A person may not be* deprived of life, liberty, or property without due process of law or *denied equal protection of the laws.* [¶] (b) *A citizen or class of citizens may not be granted privileges* or immunities *not granted on the same terms to all citizens.* Privileges or immunities granted by the Legislature may be altered or revoked" (italics added).

California Constitution, article IV, section 16 provides: "(a) All laws of a general nature have uniform operation. [¶] (b) A local or special statute is invalid in any case if a general statute can be made applicable."

[8]We see no need to reach the federal equal protection issue here. Our state Supreme Court has exercised independence in its application of the state equal protection clause, finding rights to be suspect where the United States Supreme Court has declined to do so (*Serrano* v. *Priest* (1976) 18 Cal.3d 728, 764-767 [135 Cal.Rptr. 345, 557 P.2d 9239]; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 17 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]). Also, our Supreme Court recently noted the United

Any equal protection analysis must begin with the primary step of determining which of the two applicable standards of review applies to the classification in issue (*Gould* v. *Grubb* (1975) 14 Cal.3d 661, 669 [122 Cal.Rptr. 377, 536 P.2d 1337]; *Serrano* v. *Priest, supra,* 5 Cal.3d, p. 597; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487], vacated on other grounds, 403 U.S. 915 [29 L.Ed.2d 692, 91 S.Ct. 2224]; *Purdy & Fitzpatrick* v. *State of California, supra,* 71 Cal.2d, pp. 578-579, and fn. 25). The first or conventional standard requires only that differential treatment of classes of individuals have some "reasonable basis" or bear ". . ."'some rational relationship to a conceivable legitimate state purpose."'" (*Schwalbe* v. *Jones* (1976) 16 Cal.3d 514, 517-518 [128 Cal.Rptr. 321, 546 P.2d 1033]; see also *Dandridge* v. *Williams* (1970) 397 U.S. 471, 485 [25 L.Ed.2d 491, 501-502, 90 S.Ct. 1153]); the second test for "suspect" classifications or "fundamental interest" (see *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 17-18 [112 Cal. Rptr. 786, 520 P.2d 10]), requires strict scrutiny and the state bears the burden of establishing a "compelling interest" (*San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, 33-34 [36 L.Ed.2d 16, 42-44, 93 S.Ct. 1278] *D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d at p. 17; *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 16 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351]).

The preferential treatment of City employees over non-City employees provided by the Ordinance here, as we have indicated, does not have any reasonable basis or bear any rational relationship to a conceivable, legitimate state purpose. City employment, in and of itself, is not evidence of competence. The Charter mandates for the hiring of qualified employees based on the applicants' merit and fitness. Thus, a city may insure a greater level of competence among its appointees by using test results as one measure. Here, it would be reasonable to use the 80 percent cutoff score to establish a preferred list, if applied to all applicants.[9]

---

States Supreme Court's formulations in the equal protection area are in flux (*Johnson* v. *Hamilton* (1975) 15 Cal.3d 461, 468 [125 Cal.Rptr. 129, 541 P.2d 881]).

[9]As the instant disparate treatment in question does not satisfy the less stringent requirements of the rational relationship test, we need not discuss the "strict scrutiny" test. We note, however, that the courts of this state have characterized employment as a fundamental interest under the California Constitution. The state Supreme Court has held that the state may not arbitrarily foreclose any person's right to pursue an otherwise lawful occupation. The right to work and the concomitant opportunity to achieve economic security and stability are essential to the pursuit of life, liberty and happiness (*Sail'er Inn, Inc.* v. *Kirby, supra,* 5 Cal.3d, p. 17). In *Cooperrider* v. *Civil Service*

We agree with the statement made by the court in its interim order: "To conclude that the simple fact of prior [City] employment, given an indicated score on a test, should carry with it the right to an absolute preference in hiring over others who demonstrated more qualifications by receiving a higher test score, but do not happen to work for the city at that time seems to the Court to be arbitrary and capricious.... [¶] ... the defendant has attempted to argue that the language 'and other evidence of competence' (Charter § 1100) is broad enough to permit the actions contemplated by Ordinance 18272. But this argument is fallacious, it seems to the Court, because the position taken necessarily assumes that the *fact* of prior employment necessarily includes the *fact* of competence. If the ordinance contemplates some analysis of the employee's past performance during prior employment, it would be easier to see why the ordinance fit within the concept of 'other evidence of competence.' But this ordinance only takes into account the status of employment rather than performance."

We conclude that the court below properly found that the Ordinance was in conflict with the Charter and was arbitrary and unreasonable.

■ The only issue presented by the cross-appeal is whether the court properly denied Lucchesi attorney fees.

The record indicates that at the time of its decision, the court below[10] did not have the benefit of *Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917 [154 Cal.Rptr. 503, 593 P.2d 200]. In *Woodland Hills*, our Supreme Court discussed the applicable statute, Code of Civil Procedure section 1021.5[11] and the applicable theories, common fund, substantial benefit and private attorney general.

---

*Commission* (1979) 97 Cal.App.3d 495 [158 Cal.Rptr. 801], we recently reiterated that the right to be considered for public employment without unreasonable or invidious distinctions is as fundamental as a right to subsistence benefits or medical care.

[10]The court's order denying attorney fees was dated July 1977; *Woodland Hills* was decided on April 3, 1979.

[11]Section 1021.5: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor."

So far as here pertinent, our Supreme Court noted that the private attorney general theory is predicated upon achievement of benefits substantial from the viewpoint of the general public, but too ephemeral from the standpoint of individual beneficiaries to warrant application of the substantial benefit theory. While the substantial benefit theory is based on concepts of unjust enrichment, the private attorney general theory seeks (without regard to material gain) to encourage vindication of strong public policies by private lawsuit (*Woodland Hills, supra*, 23 Cal.3d, pp. 924-925; *Serrano* v. *Priest, supra*, 20 Cal.3d, 42-48 [141 Cal.Rptr. 315, 569 P.2d 1303]; *D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d, p. 27).

Here, the City has and will be benefited by the employment of individuals who are objectively more qualified than the preferred City employee applicants who would have been chosen under the Ordinance. The citizenry at large also will be benefited by receiving better service from more highly qualified City employees. More importantly, Lucchesi have vindicated two strong public policies: the equal protection guarantees of the state Constitution have been upheld, and the City has been mandated to hire City employees based on merit, fitness and competence. We conclude, therefore, that the constitutional claim of Lucchesi was not "insubstantial" and that both the statutory and constitutional claims arose out of a common nucleus of operative facts. Accordingly, we hold that: 1) the instant action has "resulted in the enforcement of an important right affecting the public interest," and 2) a "significant benefit has been conferred on the general public."

But another critical factor affects Lucchesi's request for attorney fees, namely, whether the necessity and financial burden of private enforcement are such as to make the award of attorney fees appropriate. As the present action proceeded against the only governmental agencies that bear the responsibility for the implementation of City employment policies, the necessity of a private, as compared to public, enforcement becomes clear (see, e.g., *Woodland Hills, supra*, 23 Cal.3d, p. 941).

The present record, however, does not disclose whether "[the] financial burden of private enforcement" in this case is such as to make an attorney fee award appropriate under the private attorney general theory. As the Court of Appeal recently explained in *County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 89 [144 Cal.Rptr. 71], "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest,

that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter' [citation]."

The trial court, using its traditional equitable discretion, is in the best position to realistically assess the litigation from a practical perspective under the private attorney general theory. The trial court should determine the amount of the fees in light of: 1) the time spent and the reasonable hourly compensation of each attorney involved in the presentation; 2) the novelty and difficulty of the questions involved, and the skill displayed in presenting them; 3) the extent to which the nature of the litigation precluded other employment by the attorneys; 4) the contingent nature of the fee award, both from the point of view of eventual victory on the merits and the point of view of establishing eligibility for an award; 5) the fact that an award against the City would ultimately fall upon the taxpayers; 6) the fact that the attorneys here did not receive public and charitable funding for the purpose of bringing lawsuits of the character here involved; 7) the fact that the award would inure to the benefit of the attorneys involved; and 8) any other relevant factors (see *Serrano* v. *Priest, supra*, 20 Cal.3d, pp. 48-49).

On remand, the parties should be permitted to introduce evidence on these matters so that the trial court may determine whether the financial burden in this case is such that an attorney fee award is appropriate in order to vindicate an important public policy. If the court deems attorney fees are proper, it should also determine the attorney fees on this appeal (*Committee for Sewer Referendum* v. *Humboldt Bay Waste Water Authority* (1978) 77 Cal.App.3d 117 [143 Cal.Rptr. 463]).

The judgment is reversed insofar as it does not provide for attorney fees, and in all other respects affirmed; the remand to the trial court is limited to the issue of attorney fees; the trial court should also determine Lucchesi's attorney fees for this appeal; Lucchesi to recover costs on appeal.

Miller, J., and Smith, J., concurred.