[S. F. No. 16580. In Bank.—Oct. 3, 1941.]

HARRY RHODEHAMEL, Appellant, v. CIVIL SERVICE BOARD OF THE CITY OF OAKLAND et al., Respondents.

J. Paul St. Sure and Edward H. Moore for Appellant.

F. B. Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Respondents.

THE COURT.—The appeal in this case was originally heard by the First District Court of Appeal, Division One. Following a decision by that court, a petition for hearing by this court was granted. Consideration of the cause leads us to the conclusion that the appeal was correctly decided by the District Court of Appeal. Its opinion rendered therein, which was prepared by Mr. Presiding Justice Peters, is therefore adopted as the opinion of this court herein. It is as follows:

"Petitioner appeals from a judgment denying his application for a writ of mandate to compel the Civil Service Board of the City of Oakland to hold a promotional examination to obtain an eligible list for the position of Senior Account Clerk, and to terminate proceedings for an open examination, as announced by the Board. Petitioner is an employee in the classified civil service of the city, holding the position of Intermediate Account Clerk. He filed the petition as such employee, and as a resident, taxpayer, and elector of the city, and also as a member and on behalf of all members of the Oakland Municipal Civil Service Association.

"The Oakland Charter, § 77, provides as follows: 'The Board shall provide for promotion in the classified service on the basis of ascertained merit, seniority in service, and standing upon competitive examination, *and shall provide, in all cases where practicable, that vacancies shall be filled by promotion from among such members of the next lower rank established by the Board* as submit themselves for such examination for promotion. The Board shall certify to the appointing power the names of not more than three appli-

cants having the highest rating for each promotion.' (Italics ours.)

"It is urged by appellant that, under this charter provision, if it is practicable to give a promotional examination the Board has no discretion, but must give such promotional examination; that under the facts of this case it amounted to an abuse of whatever discretion is vested in the Board to order an open examination.

"The problem involved in this case is similar to that presented in *Allen* v. *McKinley* (S. F. No. 16,579, this day decided, *ante*, p. 697 [117 Pac. (2d) 342]). The charter provisions involved in the two cases are substantially similar. What was said in that case concerning the proper interpretation of such a charter provision need not be repealed in this opinion. Upon the authority of, and for the reasons stated in, *Allen* v. *McKinley, supra,* we hold:

"1. That such charter provisions are mandatory.

"2. That in passing on the question as to whether a promotional or an open examination shall be given the Board does not possess an uncontrolled discretion—that if it is practicable to give a promotional examination the Board must give such examination regardless of what its opinion may be as to the relative merits of an open or promotional examination.

"3. That if there are persons in the service who, by reason of their position in the service, possess the qualifications fixed by the Board as a prerequisite to take the examination, the Board may properly ascertain that it is impracticable to give a promotional examination only after those eligible have been given a promotional examination.

"As in *Allen* v. *McKinley, supra,* the Board argues that whether it is 'practicable' to fill a vacancy by promotion is confided to the discretion of the Board, and that such discretion is not subject to judicial control. They cite the same cases that were cited by the San Francisco Civil Service Commission in *Allen* v. *McKinley, supra,* to the effect that local administrative boards should be permitted to operate with as little interference as possible from the judicial branch of the government. However, as was pointed out in the *Allen* v. *McKinley* opinion, *supra,* local boards such as the one here involved have only such powers as the people see fit to confer upon them. If such local boards exceed or abuse their pow-

ers the courts are empowered to prevent such excess or abuse upon the petition of one adversely affected.

 ''Applying these principles to the facts here involved, and keeping in mind the fact that the trial court in the instant case has decided all controverted questions of fact in favor of the Board, we have no hesitancy in stating that the record herein demonstrates, as a matter of law, that the Board, in a legal sense, abused the limited discretion confided to it by § 77 of the Oakland Charter, *supra*.

''The evidence shows that pursuant to the powers conferred upon the Board it has classified all positions subject to civil service. Among the classified positions is one known as Intermediate Account Clerk, and another as Senior Account Clerk. On June 2, 1938, one vacancy occurred in the position of Senior Account Clerk. There was no existing eligible list from which that position could be filled. The Board, after several meetings, at which the question as to whether the examination should be open or promotional was discussed, decided to hold an open examination, on the theory that there was no rank, for promotional purposes, next lower to the position of Senior Account Clerk. Admittedly, all those holding the position of Intermediate Account Clerk, as well as many others in the Civil Service, would be eligible to take the examination for Senior Account Clerk.

''There are various factors which demonstrate that the Board abused the limited discretion vested in it. In the first place, the title 'Intermediate Account Clerk' tends to indicate that such position is of the same type, but lower in rank, to that of 'Senior Account Clerk'. In the second place, evidence shows that each position has three salaries attached to it. For the position of Intermediate Account Clerk these salaries are $140, $150, and $160 a month, depending upon merit and length of service. For the position of Senior Account Clerk the three salaries are $160, $170, and $185 per month. This again tends to show that one position is the next advanced position from the other.

''In the third place, the evidence shows that, in addition to classifying the positions, the Board has officially described the two positions. Thus, the two positions have been described officially by the Board as follows:

" 'INTERMEDIATE ACCOUNT CLERK:

" 'Under direction, to do clerical work of average difficulty involved in the keeping and certifying of financial and other office records, and the handling of office routine; to interview callers; and to do other work as required.

" 'SENIOR ACCOUNT CLERK:

" 'Under direction, to do difficult clerical work involved in auditing, keeping, and certifying financial records; and to do other work as required.'

"The 'typical duties' officially described by the Board are quite lengthy, and no useful purpose would be served by setting them forth in this opinion. Suffice it to say that an examination of such duties shows that they are quite similar, the differences being such as would be anticipated by reason of the higher salary of the superior position. This same conclusion follows from a consideration of the minimum qualifications officially fixed by the Board for each position. They are as follows:

" 'INTERMEDIATE ACCOUNT CLERK:

" 'Either (1) education equivalent to that represented by completion of the twelfth grade, and two years of clerical or other office experience, or (2) some other combination of education and clerical experience of equal or greater value; good knowledge of modern office methods and ability to operate modern office appliances; ability to understand and carry out oral and written directions; arithmetical aptitude; accuracy in computing and posting figures; resourcefulness; accuracy; good penmanship; orderliness; integrity; good address; and good judgment.

" 'SENIOR ACCOUNT CLERK:

" 'Either (1) education equivalent to that represented by completion of the twelfth grade, including a standard course in bookkeeping and three years experience as a bookkeeper, or (2) some other combination of education and experience of equal or greater value; knowledge of double and single entry bookkeeping and the keeping of financial accounts and records; intimate knowledge of accepted accounting principles and methods; skill in the operation of computing machines and other office appliances; accuracy in computing and post-

ing figures; good penmanship; integrity; orderliness; and good business judgment.'

"In the fourth place, the evidence shows that previously the Board had given a promotional examination for the position of Assistant Supervising Officer, a position more advanced and carrying a higher salary than Senior Account Clerk, and that Intermediate Account Clerks were permitted to take that promotional examination.

"From this evidence there can be no doubt that appellant presented to the trial court a *prima facie* case of abuse of discretion. From this evidence but one conclusion can be reached, namely, that the positions of Intermediate Account Clerk and Senior Account Clerk present a plain instance of positions in a regular line of promotional progression, and that before an open examination may be given to create an eligible list for the superior position, under § 77 of the charter, *supra,* those in the next lower rank are first entitled to take a promotional examination.

"In support of its determination that a promotional examination was not 'practicable', and in an attempt to meet the *prima facie* case of appellant, the Board offered the testimoney of T. G. Stahlberg, secretary and chief examiner of the Board, and of Harold C. Holmes, Jr., president of the Board. They both frankly admitted that two of the factors that motivated the Board in its determination were that, in the opinion of the Board, a better man would be secured by an open examination than would be secured by a promotional examination because a larger group would take the examination; and that, if the position of Intermediate Account Clerk were established as the position next lower in rank to that of Senior Account Clerk, there were still higher positions above Senior Account Clerk for which such intermediate clerks would not be eligible. In the opinion of the Board, therefore, Intermediate Account Clerks should not be permitted to take a promotional examination for Senior Account Clerk because that would be as high as they could go. This second factor was frequently referred to by both witnesses and obviously was one of the major factors that led the Board to determine to give an open examination. At the time of the oral argument counsel for respondents conceded that neither, or both, of these factors 'standing alone' constitute a lawful justification for the action of the Board.

"This concession is in accordance with the law. The question as to whether better employees will be secured by open or promotional examinations is one of policy. The people of the city of Oakland have settled that question of policy and have taken its determination from the Board by § 77 of the charter, *supra*. They have determined, as a matter of policy, that, in the long run, better employees will be secured, and higher efficiency promoted, by a system of promotional examinations. That is a question of legislative and not administrative or judicial policy. Neither the Board nor this court, whatever its opinion as to the merits of that policy may be, is empowered to substitute its opinion for that of the people as set forth in the charter.

"The second reason—that Intermediate Account Clerks could not take promotional examinations for positions higher than that of Senior Account Clerk—obviously should not have been considered by the Board. If a civil service board may deny an employee the right to advance one rank by means of a promotional examination because he will not be able to be promoted to a still higher rank, it can deny the right to all promotional examinations. Obviously, only a very few are qualified for the highest positions, but that is no reason for denying the employee the opportunity to rise as far as his ability and training will permit him. It is obvious that these two factors, therefore, cannot be relied upon as a lawful justification for the action of the Board.

"Stahlberg and Holmes also testified that in their opinion the duties of the two positions were such that one was not promotional from the other. In fact, in their answer in the trial court the respondents pleaded that there is no position in the classified service which affords sufficient training to make the position of Senior Account Clerk promotional from a lower rank. This contention, if sustained, would mean that the names given to the positions of Intermediate and Senior Account Clerks were misnomers. It would also mean that the Board would be justified in substituting its present opinion in place of the description of the duties of the two positions as officially set forth by the Board itself without any action by the Board in changing the description of those duties. We think the evidence demonstrates that the duties are such that the superior position is promotional from the inferior one, and that the 'opinion' of the secretary and president finds

no support in the record. It must be remembered that for one position to be promotional from the other it is not required that the duties of the two be identical. The real question is whether the duties of the inferior position are such that they reasonably prepare the employee for the superior position. On that question the evidence is clear and uncontradicted. The duties of Intermediate Account Clerk are so related to those of Senior Account Clerk, as those duties are officially described by the Board, that the former is clearly preparatory for the latter.

██ ''The only other reason given by respondents to support the judgment, is that the Board considered the fact that, if the examination were limited to Intermediate Account Clerks, there was a possibility of not obtaining an eligible list large enough to fill all possible vacancies which might occur in the position of Senior Account Clerk during the two years that such eligible list would remain in effect. There were eight Intermediate Account Clerks, and eight Senior Account Clerks in the service during the times here involved. At the time the Board determined to give an open examination there was one vacancy in the position of Senior Account Clerk. The exact number of vacancies that would occur could not be fixed by the witnesses, but one of them stated that perhaps there would be three or four during the two-year period. It is conceivable, of course, that, if all eight Intermediate Account Clerks took a promotional examination, all eight would pass. If so, for all practicable purposes, the number on the list would be far in excess of the anticipated number of vacancies. It may be that if a promotional examination is held, none of the Intermediate Account Clerks will pass it. If so, that would conclusively demonstrate that a promotional examination is not 'practicable', and that an open one is required. But, until the promotional examination is given, it rests in mere guess or conjecture as to the number that will pass it.

''The appellant having presented a *prima facie* case that a promotional examination is practicable, and the Board having failed to offer a lawful reason why such an examination should not be held, it must be held that, as a matter of law, an abuse of discretion has been shown.''

The judgment is reversed.