[No. B020140. Second Dist., Div. Three. Apr. 28, 1987.]

SANTA MONICA MUNICIPAL EMPLOYEES ASSOCIATION, Plaintiff and Respondent, v.
CITY OF SANTA MONICA et al., Defendants and Appellants.

**COUNSEL**

Robert M. Myers, City Attorney, and Amelia K. Sherman, Deputy City Attorney, for Defendants and Appellants.

Charles F. Elsesser, Jr., and Valerie Vanaman for Plaintiff and Respondent.

**OPINION**

**LUI, Acting P. J.**—The Santa Monica Municipal Employees Association (MEA) petitioned the superior court to require appellants City of Santa Monica, City Council of the City of Santa Monica, and the Personnel Board

of the City of Santa Monica (collectively referred to as the City in this opinion) to comply with various provisions of the Santa Monica City Charter and Municipal Code. Until MEA brought this petition, the procedure of the City had been to allow the Personnel Department to determine whether civil service examinations should be "open" or "promotional"; in the latter case, only current City employees were allowed to take the examinations.

The subject provisions involve the procedure by which vacancies in civil service positions in the City of Santa Monica are filled. The trial court agreed with MEA that, according to the applicable provisions, the City has a mandatory duty to submit reasons for conducting an "open" examination to the City personnel board pursuant to charter article XI, section 1107. The trial court ordered that a peremptory writ of mandate issue commanding the City to comply with charter article XI, section 1107,[1] and applicable provisions of the Municipal Code by filling all vacancies by promotion upon competitive examinations unless the appointing authority in particular instances believes it is impractical or not in the best interest of the public service, and the reasons therefor are submitted to and approved by the personnel board.

The City appeals from the judgment granting the peremptory writ of mandate.

### PROCEDURAL BACKGROUND

Respondent MEA, an association of municipal employees in the City of Santa Monica, filed its petition for writ of mandate on August 26, 1985. It alleged that, contrary to article XI, section 1107 of the city charter, and Municipal Code sections 2103C, 2103I1, and 2103I4, the City was filling many vacancies by open examinations without obtaining approval or exemption from the personnel board. The petition alleged that the charter and Municipal Code required that all vacancies in civil service positions should

---

[1]Article XI, section 1107, provides as follows: "Performance Evaluations. A system of compulsory, periodic, at least annually, efficiency ratings shall be established by the Personnel Director for all employees in the Classified Service, subject to the approval of the Personnel Board.

"Special rating forms shall be designed for such classifications as require them in order that the quality of performance, by each person rated, of the required functions of the positions may be accurately reflected through their use.

"The City Manager shall be required to rate all department heads and subordinate officers. The department heads shall rate all officers and employees in their respective departments.

"Promotions shall be on the basis of ascertained merit, credit and seniority in service and examination. *Vacancies shall be filled by promotion upon competitive examinations unless the appointing authority in particular instances believes it impractical or not in the best interest of the public service, and the reasons therefor are submitted to and approved by the Personnel Board.*" (Italics added.)

be "filled by competitive promotional exams, limited to qualified City employees, unless the City Personnel Board specifically approves otherwise." Pursuant to an opinion by the Santa Monica City Attorney, attached to the petition and dated April 4, 1985, the City was allegedly taking the position that it had no duty to fill the vacancies by promotional examinations without the City personnel board's prior approval of open examinations. MEA alleged that its members had thereby been deprived of access to promotion and upward mobility in City employment.

In the answer to the petition, the City alleges several affirmative defenses, including the statute of limitations, laches, and failure to state a cause of action in that MEA has not alleged the denial of promotional opportunities to its members; MEA's request conflicts with the equal employment opportunities and employment based on merit provisions in the Santa Monica City Charter; and MEA erroneously seeks to use a petition for writ of mandate to enforce a discretionary decision.

Thereafter, on January 28, 1986, MEA filed a motion for peremptory writ of mandate. A stipulation of facts was included as exhibit 1 to the petition, and the parties extensively briefed the issue for the trial court.

In summarizing the evidence in the stipulation of facts as part of its statement of decision, the trial court observed that the "stipulated facts establish that on numerous occasions up to November 1985, the City acting through the Personnel Director and other staff members [has] made determination to conduct, and did conduct 'open' civil service examinations without submitting reasons therefore [*sic*], to the Personnel Board and without obtaining the approval of that Board."

The trial court then summarized and responded to each of the City's contentions and defenses[2] and determined that the City has a mandatory

---

[2]In response to the City's argument that section 1101, the "equal opportunity" provision of the city charter, added in 1977, amends section 1107, the court determined that the provisions of the two sections are not inconsistent and can be read together. The court further found that MEA is an association of permanent civil service employees who are clearly injured when the City conducted an open rather than a promotional examination; this finding was in response to the City's assertion that MEA could not plead harm as the result of the City's practice.

The court also found that the claim of laches lacks merit in that (1) the City has not shown prejudice, and (2) the City has not established that MEA's members have been permanent employees for a sufficient span of time to invoke laches. Similarly, the affirmative defense of statute of limitations was overruled on the ground that the City's noncompliance with section 1107 has been and is a continuing violation.

Regarding the City's argument that charter provisions that discriminate against non-City employees are invalid under *Lucchesi* v. *City of San Jose* (1980) 104 Cal.App.3d 323 [163

duty to comply with charter article XI, section 1107, before conducting "open" civil service examinations and that the "reasons" for conducting the open examinations must be submitted in writing to the personnel board.

The City's contentions on appeal may be summarized as follows:

1. Charter section 1107 does not apply to the question of whether an examination shall be held on an open basis. It merely permits promotion without any examination in very special instances and with the approval of the personnel board.

2. Status as a current employee cannot be the sole basis for preference in filling employment vacancies.

3. The court below erred in finding that laches did not apply.

4. The record below contained no showing of harm to petitioner, so the petition for writ of mandate should have been denied.

DISCUSSION

1. *The Trial Court Was Correct in Its Interpretation of Section 1107*

The City rejects the trial court's decision that article XI, section 1107 (hereinafter, section 1107) of the Santa Monica City Charter requires vacancies in civil service positions be filled by promotional examinations unless the appointing authority believes it is impractical or not in the best interest of the public service and submits the reasons therefor to the personnel board, which must then approve the open examinations. The City points out section 1107 is entitled "Performance Evaluations" and argues that the clear intent of the last paragraph of section 1107 is to permit promotion without any examination whatsoever in very special instances and with the approval of the personnel board. In addition to relying on its construction of the subject charter provision, the City also asserts that the decision on whether the

---

Cal.Rptr. 700], the court believed that *Lucchesi* did not hold that promotional examinations are illegal per se and, citing *Allen* v. *McKinley* (1941) 18 Cal.2d 697 [117 P.2d 342] and *Rhodehamel* v. *Civil Service Board* (1941) 18 Cal.2d 709 [117 P.2d 349], such charter provisions favoring promotional examinations have long been upheld.

The court also found that section 1107 can be construed only as imposing a mandatory duty, not a discretionary one, and that a petition for writ of mandate is therefore appropriate.

examination is open or promotional has been made by the professional staff of the personnel department and not by the personnel board for the last 20 years; the City argues therefrom that the personnel board has acquiesced in the City's interpretation of section 1107.

■  We agree with the trial court's interpretation of section 1107. The last paragraph of section 1107 states: "Promotions shall be on the basis of ascertained merit, credit and seniority in service and examination. Vacancies shall be filled by promotion upon competitive examinations unless the appointing authority in particular instances believes it impractical or not in the best interest of the public service, and the reasons therefor are submitted to and approved by the Personnel Board." At least as to nonentry level positions, where by definition vacancies could not be filled "by promotion," the plain words of the section, which the City is free to attempt to change if it so desires, provides for promotional competitive examinations, not open competitive examinations, unless there is approval by the personnel board following certain circumstances listed in the section.[3]

Neither are we convinced by the City's argument that the personnel board's nonassertion of power compels a conclusion that MEA's interpretation of section 1107 is incorrect. A nonassertion of power over a 60-year period was found significant in *Bankamerica Corp.* v. *United States* (1983) 462 U.S. 122, 132 [76 L.Ed.2d 456, 464, 103 S.Ct. 2266], where the business community directly affected, the enforcing agencies, and the Congress had read a certain statute the same way for 60 years. The government in *Bankamerica Corp.* was urging a different construction than what "was universally perceived as plain statutory language." (*Id.,* at p. 133 [76 L.Ed.2d at p. 465].) In addition, the court in *Bankamerica Corp.* noted that, "[i]t is true, of course, that '[a]uthority actually granted by Congress . . . cannot evaporate through lack of administrative exercise,' [citation]; the mere

---

[3]Certainly, the City ordinances relied upon by MEA support this construction of the charter provision. For example, section 2103I4 of the Santa Monica Municipal Code provides in pertinent part: "If there is a promotional eligible list appropriate for filling a vacancy, such list shall be utilized before the open competitive list may be used. . . . When no promotional list is available to fill a vacancy, an examination shall be held to establish such a promotional list, unless the appointing power believes it impractical, or not in the best interest of the [C]ity service, and requests a non-competitive promotional examination or an open competitive examination. In this event, the reasons for making the request to waive competitive promotional examination must be submitted to and approved by the Personnel Board. . . ." Section 2103C, entitled "Competitive Examinations," provides in part: "The relative merit of applicants for appointment to, or promotion within, the Classified Service shall be determined by competitive examination, unless promotion is authorized by the Personnel Board, upon recommendation of the appointing authority, without competitive examination or by open competitive examination. . . ." Other Municipal Code sections also support MEA's interpretation of section 1107.

failure of administrative agencies to act is in no sense 'a binding administrative interpretation' that the Government lacks the authority to act. [Citation.]" (*Id.,* at p. 131 [76 L.Ed.2d at p. 464].)

We do not find the personnel board's failure to adhere to the dictates of section 1107 is a conscious interpretation of the statute that should bind a municipal employees' association. Furthermore, as stated above, we believe that the City's construction of section 1107 is erroneous. █ "An erroneous administrative construction does not become decisive of the law no matter how long it is continued. [Citations.]" (*Golden Gate Scenic Steamship Lines, Inc.* v. *Public Utilities Com.* (1962) 57 Cal.2d 373, 377, fn. 2 [19 Cal.Rptr. 657, 369 P.2d 257].)

2. *Under Current Case Law, Promotional Examinations Preferring Only Current Employees Are Valid*

█ The City argues that, assuming MEA's interpretation of section 1107, such a construction permits status as a current employee to be the sole basis for preference in filling employment vacancies, thereby unlawfully discriminating against nonemployees for public employment vacancies.

The City relies in large part on *Lucchesi* v. *City of San Jose, supra,* 104 Cal.App.3d 323. The court in *Lucchesi* determined that a preference given in an ordinance to persons already employed by the city was invalid in that it conflicted with the requirement of the city charter that appointments and promotions " '*shall be made on the basis of merit and fitness . . . .*' " (*Id.,* at p. 326, italics in original.) The court decided that the preferential treatment of city employees over noncity employees "does not have any reasonable basis or bear any rationale relationship to a conceivable, legitimate state purpose. City employment, in and of itself, is not evidence of competence. The Charter mandates for the hiring of qualified employees based on the applicants' merit and fitness." (*Id.,* at p. 333.)

Unfortunately for the City at this stage of the appellate process, the California Supreme Court long ago decided that preferring promotional over open examinations was appropriate. As stated in *Allen* v. *McKinley, supra,* 18 Cal.2d at pages 705-706, "[t]his provision embodies one of the fundamental concepts of a sound civil service system. All authorities agree that promotions are an essential of a sound civil service system. The purpose of civil service is twofold—to abolish the so-called spoils system, and to increase the efficiency of the service by assuring the employees of continuance in office regardless of what party may then be in power. Efficiency is

secured by the knowledge on the part of the employee that promotion to higher positions when vacancies occur will be the reward of faithful and honest service. Provisions . . . that promotional examinations shall be held when practicable, are intended to promote efficiency among public employees. [Citations.] Its provisions are mandatory, and must be complied with." (See also *Rhodehamel* v. *Civil Service Board, supra,* 18 Cal.2d 709.) Both *Allen, supra,* 18 Cal.2d at page 699, and *Rhodehamel, supra,* 18 Cal.2d at page 711, involved charter provisions that recognized "ascertained merit" should be part of the basis for promotion.

The City is correct that there have been many changes in employment law since *Allen* and *Rhodehamel* were decided in 1941. ■ However, unless and until the Legislature or the California Supreme Court decides to reject the determination that current City employees can be given preference for vacancies, we are bound by that court's determination. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ The addition of a fair employment practice section to article XI in 1977[4] does not, as urged by the City, alter section 1107. Section 1107 does not mandate promotional examinations. It does state that such examinations should be given for vacancies in employment but only "unless the appointing authority in particular instances believes it impractical or not in the best interest of the public service, and the reasons therefor are submitted to and approved by the Personnel Board." As the trial court observed, the sections do not conflict. Rather, the City's laudable goal of equal opportunity might well be considered by the personnel board in determining if it is "not in the best interest of the public service" to have a promotional examination. Questions arising from such a decision by the board, we are certain, will be resolved in further litigation.

3. *The Trial Court Did Not Err in Finding That Laches Did Not Apply*

■ The City asserts that laches is a defense to the action. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." (*Conti* v. *Board of Civil Service Commissioners* (1969) 1 Cal.3d 351, 359, fns. omitted [82 Cal.Rptr. 337, 461 P.2d 617]; *City of San Marcos*

---

[4]Section 1101 of article XI provides in pertinent part: "Fair Employment Practice. All persons shall have equal opportunity to obtain and hold employment, and to advance therein, from or under any board, department, officer or agency in this Charter enumerated or provided for, without discrimination prohibited by state or federal law."

v. *California Highway Com.* (1976) 60 Cal.App.3d 383, 397 [131 Cal.Rptr. 804].)

The trial court specifically found that prejudice to the City had not been clearly demonstrated nor had the City established that MEA's members had been permanent employees for a sufficient span of time to invoke laches. The City does not allege prejudice to itself except that it will have to institute new procedures and perhaps hire new employees and that there will be an increased workload for the board of personnel. However, all of these factors would have occurred regardless of when the action had been instituted.

Given these factors, the continuing nature of the violation, and no assertion of acquiescence, the trial court did not err in finding that the laches defense lacked merit.

### 4. *Mandamus Was an Appropriate Remedy*

The City contends that since there was no showing of actual harm to individual members of MEA or to MEA itself, the petition should have been denied. Section 1085 of the Code of Civil Procedure provides that a writ of mandate may be issued "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which is unlawfully precluded by such inferior tribunal, corporation, board or person." Section 1086 of the Code of Civil Procedure provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law. It must be issued upon the verified petition of the party beneficially interested."

As summarized by Witkin, there are dual requirements for mandamus: "(1) A clear, present (and usually ministerial) duty on the part of the respondent. (2) A clear, present and beneficial right in the petitioner, to the performance of that duty." (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 65, p. 702.)

MEA and its members are clearly beneficially interested in how vacancies are filled for civil service positions in the City of Santa Monica. At the hearing in the court below, counsel for the City did not contest that MEA has a beneficial interest in the process. However, the City contended that MEA had to show harm before it could prevail in the lawsuit.

The harm, of course, to members of MEA is potential rather than definite. In any event, " '[B]y the preponderance of authority . . . where the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced. . . . Generally, when a power or duty is imposed by law upon a public board or officer, and in order to execute such power or perform such duty, it becomes necessary to obtain a writ of mandamus, it or he [or she] may apply for the same.' [Citations.]" (*Hollman* v. *Warren* (1948) 32 Cal.2d 351, 357 [196 P.2d 562]; see, e.g., 8 Witkin, Cal. Procedure, *op. cit. supra*, § 74, pp. 713-714, and cases cited therein.)

The judgment is affirmed.

Danielson, J., and Arabian, J., concurred.