Filed 11/5/14  Spencer v. HVM CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALEX SPENCER et al., | B249121 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC047629) |
| v. | |
| HVM LLC MANAGEMENT COMPANY, | |
| Defendant and Respondent. | |
| ALEX SPENCER et al., | B251374 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. GC047629) |
| v. | |
| CITY OF ARCADIA, | |
| Defendant and Respondent. | |

APPEALS from judgments of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed in part, reversed in part and remanded.

Law Office of Jason T. Baker, Jason T. Baker, Law Office of Jason E. Ochs, and Jason E. Ochs, for Plaintiffs and Appellants.

Mayer Brown, Donald M. Falk, Elizabeth Mann, and Michael D. Shapiro, for Defendant and Respondent HVM LLC Management Company.

Best Best & Krieger, Howard B. Golds and Scott W. Ditfurth, for Defendant and Respondent City of Arcadia.

_____

Lead plaintiff Alex Spencer and eight other one-time guests of an Extended Stay America hotel operated by respondent HVM LLC Company (HVM) appeal from judgments in favor of HVM and respondent City of Arcadia (the City). Appellants contend that HVM required them to check out and reregister every 30 days in violation of Civil Code section 1940.1 and the unfair competition law, Business and Professions Code section 17200, et seq. (UCL), and that HVM and the City collected transient occupancy tax in violation of Revenue and Taxation Code section 7280, the Arcadia Municipal Code, and the California Constitution. Appellants also argue they should have been allowed to allege additional violations against the City, after HVM was granted summary judgment.

We agree with appellants that HVM was not entitled to summary judgment under the exception in Civil Code section 1940, subdivision (b)(2) for hotels that offer certain enumerated services to their guests. The City, on the other hand, was entitled to summary judgment on other grounds: because the conditional use permit (CUP) for transient use of the hotel was in line with the local ordinance, and appellants did not show it violated any other state law. The court did not abuse its discretion in denying appellants leave to amend.

We reverse the judgment for HVM in case No. B249121 and remand for further proceedings. We affirm the judgment for the City in case No. B251374.

2

**FACTUAL AND PROCEDURAL SUMMARY**

HVM operates the hotel under a CUP issued by the City in 1997. The CUP provides that it "is specifically for transient hotel use. Guest occupants shall reregister every 30 days in the event that their length of stay will exceed 30 consecutive days. The applicant and property owner shall execute and record a legal instrument precluding conversion of the project into a residential use." To comply with the CUP, HVM checks out and reregisters its guests every 30 days if they wish to stay for a longer time. It also collects transient occupancy tax from all guests and remits the tax to the City. Hotel guests, including some appellants, contacted HVM, the City business license officer, and the City Attorney for tax refunds and were denied.

On June 30, 2011, appellants, who had used the hotel as their primary residence for various periods as early as 2008, sued HVM and the City. They sought a declaration that the CUP's check-out and re-registration requirement violated state and local laws. Violations of Civil Code section 1940.1 and the UCL were specifically alleged against HVM, and a violation of Revenue and Taxation Code section 7280 was alleged against both respondents. Class allegations were added to the first amended complaint. In addition to declaratory relief, appellants sought a civil penalty under Civil Code section 1940.1, damages, restitution and injunctive relief.

In 2013, HVM filed a motion for summary judgment or summary adjudication. The trial court granted summary judgment, finding HVM was exempt from Civil Code section 1940.1 because it offered all services required for the hotel exemption authorized by Civil Code section 1940, subdivision (b)(2). The court found, in the alternative, that statutory penalties under Civil Code section 1940.1 were limited to violations occurring on and after June 30, 2010, within one year before the complaint was filed. The court ruled Revenue and Taxation Code section 7280 did not apply to HVM because it was not a legislative body of a city or county, and it did not apply to a charter city like Arcadia, as to which appellants had failed to exhaust their administrative remedies. Because HVM

3

had complied with the CUP and the Arcadia Municipal Code, the court found no illegal or unfair business practice.

The judgment in favor of HVM was appealed in case No. B249121. Appellants then moved for leave to file a second amended complaint against the City. The City opposed the motion as a prejudicial attempt to avoid the court's previous adverse ruling on HVM's summary judgment motion. The motion was denied, and the parties entered into a stipulated judgment. They agreed the court would make the same rulings on appellants' claims against the City as it did on their claims against HVM, reserving their rights to appeal. The appeal in case No. B251374 followed. We consolidated the two appeals for purposes of oral argument and decision.

## DISCUSSION

### I

Respondents contend appellants have failed to follow the tax refund procedures under the local ordinance and therefore cannot maintain this action, which in essence is an action for a tax refund. Alternatively, they argue that to the extent the action challenges the validity of the CUP, it is untimely under Government Code section 65009, subdivision (c)(1)(E).

We are not convinced that the tax refund procedure under the local ordinance controls in this case. In *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 628–629, the Supreme Court considered "which level of government—the state or the local public entity—should define the procedures governing an action for refund of a local tax." It held that "except as to '[c]laims under the Revenue and Taxation Code or other statute prescribing procedures for the refund . . . of any tax,' the Legislature has determined that the Government Claims Act [Gov. Code, § 810 et seq.] applies." (*McWilliams*, at pp. 628–629, citing Gov. Code, § 905.) The court concluded that the word "statute" in Government Code section 905 did not include local ordinances, overruling *Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 84, on

4

which respondents rely for the proposition that local transient occupancy tax refund procedures should be "strictly enforced." (*McWilliams*, at pp. 621–626.) Under *McWilliams*, the claim presentation procedures of the Government Claims Act, rather than the local tax refund procedures, control in actions for refund of a local tax. (*Id*. at pp. 616–617, 629) The record before us is silent regarding the parties' compliance with that statute.

We decline to consider whether appellants' action is barred by the 90-day statute of limitation for actions to "determine the reasonableness, legality, or validity of any condition attached to a . . . conditional use permit . . . ." (Gov. Code, § 65009, subd. (c)(1)(E).) The statute of limitations is an affirmative defense that is waived if not properly pled. (*County of Los Angeles v. Commission on State Mandates* (2007) 150 Cal.App.4th 898, 912.) As appellants note in case No. B249121, the defense is raised for the first time on appeal.

## II

A motion for summary judgment should be granted if "'there is no triable issue as to any material fact'" and "'the moving party is entitled to a judgment as a matter of law.'" (*Biancalana v. T.D. Service Co.* (2013) 56 Cal.4th 807, 813.) The moving party bears the burden of persuasion throughout, and it bears the initial burden of production "to make a prima facie showing of the nonexistence of any triable issue of material fact"; if it does, the burden shifts to the opposing party "to make a prima facie showing of the existence of any triable issue of material fact . . . ." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851, fns. omitted.) We review the trial court's ruling on a motion for summary judgment de novo, viewing the evidence in the light most favorable to the opposing party. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 499.)

### A. Appellants' Claims against the City

#### 1. Claim under Revenue and Taxation Code Section 7280

Revenue and Taxation Code section 7280, subdivision (a) provides in part: "The

legislative body of any city, county, or city and county may levy a tax on the privilege of occupying a room or rooms, or other living space, in a hotel, inn, tourist home or house, motel, or other lodging unless the occupancy is for a period of more than 30 days." Appellants concede that, as a charter city, Arcadia may enact a local transient occupancy tax ordinance that directly conflicts with the state statute. They argue incorrectly that if the local ordinance does not conflict with the state statute, the state statute is not "preempted" by the local ordinance, and an inconsistent action of the City may violate both.

"Under article XI, section 7 of the California Constitution, '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.'" (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897.) "Under article XI, section 5, subdivision (a) of the California Constitution, a charter city . . . 'gain[s] exemption, *with respect to its municipal affairs*, from the "conflict with general laws" restrictions of' article XI, section 7. [Citation.]" (*Id*. at p. 897, fn. 1.) Only if a charter city's measure is not a municipal affair and is in conflict with a state statute do the general rules of preemption apply. (See *id*. at p. 897.) Otherwise, a charter city is subject only to its own charter and the California Constitution. (*Miller v. City of Sacramento* (1977) 66 Cal.App.3d 863, 867.)

Local taxes generally are a municipal affair. (*City of Glendale v. Trondsen* (1957) 48 Cal.2d 93, 98.) Appellants do not argue otherwise. Thus, there is no basis for applying Revenue and Taxation Code section 7280 in this case. Even assuming that a local transient occupancy tax may "impinge" on state-wide concerns, it is not preempted by Revenue and Taxation Code section 7280. (See *City of San Bernardino Hotel/Motel Assn. v. City of San Bernardino* (1997) 59 Cal.App.4th 237, 243–245.)

2. *Claims under the Arcadia Municipal Code and the California Constitution*

In their first amended complaint, appellants sought a declaration that the CUP "does *not* preempt state or local laws," and alleged that HVM engaged in unfair business practices "in violation of local ordinances and state law." They specifically cited the

6

definition of "transient" in former Arcadia Municipal Code section 2661.4 in relation to the asserted violation of Revenue and Taxation Code section 7280. In opposition to HVM's summary judgment motion, appellants briefly stated that their declaratory relief and unfair business practices claims were premised on a violation of the municipal code and "the California Constitution's requirement that any raising of taxes be by vote of the public." Assuming these cursory references to the municipal code and California Constitution are sufficient to preserve the issue on appeal, we see no violation of these laws.

The rules of statutory construction apply to the interpretation of local ordinances. (*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 305.) We "begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes. [Citation.] We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole. [Citation.]" (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.) We also are mindful of the presumption that official duties are properly carried out. (Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"].)

In the relevant period, the Arcadia Municipal Code imposed on transients a tax in the amount of 10 percent of the "rent" charged by the operator for "the privilege of occupancy in any hotel." (Arcadia Mun. Code, § 2662.) Hotel operators were required to collect the tax along with the rent; at certain intervals, they were to report to the City the amount of rent and tax collected and remit the tax to the City. (*Id.*, §§ 2664.1, 2664.5.) They also were required to post a specified notice about collecting the tax of the premises. (*Id.*, § 2664.2.) The tax was deemed "a debt owed by the transient to the

7

City," and tax collected by the operator but not remitted to the City was deemed "a debt owed by the operator to the City." (*Id.*, § 2664.8.)

"Hotel" was defined as "any structure . . . occupied or intended or designed for occupancy by transients," and "occupancy" as "the use or possession, or the right to the use or possession of any room." (Arcadia Mun. Code, §§ 2661.2, 2661.3) "Transient" was "[A]ny person who exercises occupancy or is entitled to occupancy by reason of concession, permit, right of access, license or other agreement for a period of thirty (30) consecutive calendar days or less. . . . Any such person so occupying space in a hotel shall be deemed to be a transient until the period of thirty (30) days has expired unless there is an agreement in writing between the operator and the occupant providing for a longer period of occupancy." (*Id.,* § 2661.4.)[1]

Appellants read the definition of "transient" as authorizing the City to collect tax "only up to 30 days." That is incorrect. During the relevant time, the tax was imposed on "transients" for the duration of their "occupancy," which included the "right to the use" of a room at a hotel. (Arcadia Mun. Code, §§ 2661.3, 2662.) The definition of "transient" included both persons who stay, or are entitled to stay, at a hotel for 30 days or less. The only exception from transient status was by a written agreement with the operator for longer occupancy. (*Id.*, § 2661.4.) Thus, by its own terms, the municipal code allowed the City to collect transient tax from guests at a hotel intended for transient use, regardless of the guests' actual length of stay, as they were only entitled to stay at the hotel for 30 days or less at a time.

Appellants also argue that "[t]he City purporting to require, via CUP, the Hotel to charge . . . tax in violation of the Arcadia Municipal Code was illegal and wrong." But the CUP does not require the hotel to charge any tax. It only limits the use of the

---

[1] After this action was filed, the definition of "transient" was amended to state that a person would be deemed transient for a period of 90 days, and would not be subject to the tax on the 91st day of a "continuous and uninterrupted period" longer than 90 days.

8

building. "A conditional use permit . . . allows a use permitted rather than proscribed by the zoning regulations, but because of the possibility that the permitted use could be incompatible in some respects with the applicable zoning, a special permit is required. [Citation.] [¶] . . . [¶] The conditions of the permit further limit the authority to use the property pursuant to the use permit, and if the permittee exercises its authority to use the property in accordance with the permit, it must accept the burdens with the benefits of the permit. [Citation.]" (*Sports Arenas Properties, Inc. v. City of San Diego* (1985) 40 Cal.3d 808, 815.)

The use limitation in the CUP brings the hotel within the scope of the relevant definitions in the municipal code. The CUP limits the building to "transient hotel use," and prohibits residential use, thus bringing it within the definition of "hotel" in Arcadia Municipal Code section 2661.2. Because Arcadia Municipal Code section 2661.4 defined "transient" as a person who stays or is entitled to stay at a hotel for 30 days or less, and the hotel was limited to transient use, HVM was properly required to check its guests out every 30 days in order to comply with the use limitations in the CUP. By implication, it was not allowed to enter into written agreements with its guests providing for longer periods of occupancy, as such agreements would have run afoul of the definition of "transient" in the municipal code and of the use restriction on the property in the CUP. Thus, appellants could not have validly expected to be anything but transient occupants of the hotel.

Appellants claim that the CUP violates Article XIII C section 2 of the California Constitution, which prohibits increasing municipal taxes without voter approval. The claim is based on the incorrect premise that the CUP, rather than the municipal code, extends the transient occupancy tax to appellants. As we explained, the CUP only limits the use of the hotel and brings it into the applicable definitions of the municipal code. It does not increase the tax, or apply it to more persons than the municipal code itself covered.

9

As there are no material issues of fact as to any of the claims asserted against the City in the first amended complaint, summary judgment for the City was proper. To the extent the same claims were made against HVM, they fail for the same reasons.

## B. Appellants' Remaining Claims against HVM

### 1. Claim under Civil Code section 1940.1

Civil Code sections 1940 through 1954.1 offer tenants' rights to "all persons who hire dwelling units located within this state." (Civ. Code, § 1940, subd. (a).) The definition of "persons who hire" does not include persons maintaining "[t]ransient occupancy in a hotel . . . when the transient occupancy is or would be subject to tax under Section 7280 of the Revenue and Taxation Code."[2] (Civ. Code, § 1940, subd. (b)(1).) Civil Code section 1940.1, subdivision (a) in turn prohibits requiring "an occupant of a residential hotel, as defined in Section 50519 of the Health and Safety Code, to move, or to check out and reregister, before the expiration of 30 days occupancy if a purpose is to have that occupant maintain transient occupancy status pursuant to [Civil Code section 1940, subdivision (b)(1)]." A residential hotel is by definition used by its guests as their "primary residence"; on the other hand, a hotel that "is primarily used by transient guests who do not occupy [it] as their primary residence" is not a residential hotel. (Health & Saf. Code, § 50519, subd. (b)(1).)

Appellants argue HVM required them to maintain transient occupancy status in violation of Civil Code section 1940.1. HVM does not challenge the applicability of Civil Code section 1940.1, subdivision (a) on its face, nor does it argue that the practice of reregistering guests did not violate that statute. Instead, it relies exclusively on the exception in Civil Code section 1940, subdivision (b)(2) for persons maintaining occupancy at a hotel where an innkeeper "retains a right of access to and control of the

_____

[2] As we already explained, Revenue and Taxation Code section 7280, subdivision (a) allows the legislative body of a general law city to levy transient occupancy tax on hotel room occupancy, "unless the occupancy is for a period of more than 30 days." Appellants have not shown that the statute applies in this case.

10

dwelling unit" and offers certain enumerated services; the occupants of such a hotel are excluded from the definition of "persons who hire" in subdivision (a) and thus excluded from the entire tenants' rights scheme. (Civ. Code, § 1940, subd. (b)(2).)

The only issue on appeal with regard to the alleged violation of Civil Code section 1940.1 is whether that section applies to HVM on the basis that the hotel offered a "[f]ood service provided by a food establishment, as defined in Section 113780 of the Health and Safety Code, located on or adjacent to the premises of the hotel . . . and owned or operated by the innkeeper or owned or operated by a person or entity pursuant to a lease or similar relationship with the innkeeper or person or entity affiliated with the innkeeper." (*Id.*, § 1940, subd. (b)(2)(E).) We conclude that the hotel did not provide the required food service during the relevant period.

It is undisputed that vending machines were available in the hotel throughout the relevant period. In August 2009, the hotel began to offer room service through its "Order Inn" program, with food provided by local restaurants. In 2012, after this lawsuit had been filed, it began to offer "grab and go" breakfasts. Appellants do not challenge the "grab and go" breakfasts, which brought the hotel within the general exemption from the tenancy rights' statutes in 2012, but not earlier.

*a. Vending Machines*

The parties disagree whether vending machines are a food service under Civil Code section 1940, subdivision (b)(2)(E). Appellants argue vending machines were not "a food establishment" under former Health and Safety Code section 113780 at the time that section was incorporated into Civil Code section 1940, subdivision (b)(2)(E). HVM relies on the subsequent repeal of Health and Safety Code section 113780, and the inclusion of vending machines in the current definition of "food facility" in Health and Safety Code section 113789.

A specific rule of statutory construction applies to the incorporation of one statute into another. "'[W]here a statute adopts by specific reference the provisions of another statute, . . . such provisions are incorporated in the form in which they exist at the time of

11

the reference and not as subsequently modified, and . . . the repeal of the provisions referred to does not affect the adopting statute, in the absence of a clearly expressed intention to the contrary. [Citations.]'" (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58–59 [Alien Land Act reference to "any treaty now existing" between the United States and Japan not affected by treaty's subsequent repeal].) Conversely, "where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . . [Citations.]" (*Id.* at p. 59.) "Moreover, where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be . . . legislative intent . . . .' [Citation.]" (*In re Jovan B.* (1993) 6 Cal.4th 801, 816 [incorporation of specific adult determinate sentencing provisions into juvenile delinquency law included their subsequent amendments because of intent to treat adult and juvenile offenders equally].) Thus, "where it is questionable whether only the original language of a statute is to be incorporated or whether the statutory scheme, along with subsequent modifications, is to be incorporated, the determining factor will be the legislative intent behind the incorporating statute." (*People v. Domagalski* (1989) 214 Cal.App.3d 1380, 1386.)

Civil Code section 1940, subdivision (b)(2)(E) was added in 1994 to replace the requirement that hotels offer "central dining . . . and recreational services" in order to be exempt. It was intended to reflect "recent development trends" where "dining" may be offered "in an affiliated food establishment located on or adjacent to the hotel or motel, but is not 'central dining.'" (Off. of Sen. Floor Analyses of Sen. Bill No. 2088 (1993-1994 Reg. Sess.) Aug. 18, 1994.) The subdivision originally referenced the definition of "food establishment" in former Health and Safety Code section 27520; in 1996, after a reorganization of the Health and Safety Code, the reference was updated to former Health and Safety Code section 113780. (Legis. Com. com., Deering's Ann. Civ. Code, § 1940, pp. 483–484; Stats. 1995, ch. 415, § 1, p. 2795.)

12

While it existed, the definition of "food establishment" was "any room, building, or place, or portion thereof, maintained, used, or operated for the purpose of storing, preparing, serving, manufacturing, packaging, transporting, salvaging, or otherwise handling food at the retail level." A "vending machine" was specifically excluded from that definition, but "food establishment" and "vending machine" were included in the definition of "food facility" in both former Health and Safety Code section 27521 and in its replacement, former Health and Safety Code section 113785. The definitions were part of the California Uniform Retail Food Facilities Law. (Stats. 1984, ch. 256, § 1, p. 775; Stats. 1995, ch. 415, § 1, pp. 2793, 2795.) In 2006, that statute was renamed the California Retail Food Code, the term "food establishment" was dropped, and the term "food facility" was defined to mean "an operation that stores, prepares, packages, serves, vends, or otherwise provides food for human consumption at the retail level, including, but not limited to, the following:  [¶] (1) An operation where food is consumed on or off the premises, regardless of whether there is a charge for the food. . . ."  (See Health & Saf. Code, §§ 113711, 113789, subd. (a).)  As before, vending machines were included in the list of examples of food facilities. (*Id*., § 113789, subd. (b)(8).)

The statutory history makes clear that vending machines were excluded from the term "food establishment" at the time that term was specifically referenced in Civil Code section 1940, subdivision (b)(2)(E). The food service contemplated in that subdivision was a reflection of a specific trend in the provision of dining services at hotels and motels by the mid-1990's. There is no indication that the Legislature contemplated the provision of vending machines to be part of that development or an acceptable alternative to central dining. Nor can it be said that the Legislature intended to import the broad category "food facility" from the California Uniform Retail Food Facilities Law into the hotel exception in Civil Code section 1940, subdivision (b)(2)(E). Had it intended to do so, it could have directly referenced the term "food facility," which already existed at the time.

HVM relies on Health and Safety Code section 9, which provides:  "Whenever reference is made to any portion of this code or of any other law of this State, the

13

reference applies to all amendments and additions now and hereafter made." This statutory rule of construction is qualified by Health and Safety Code section 5, which states: "Unless the provision or context otherwise requires, these definitions, rules of construction, and general provisions shall govern the construction of this code." By their own terms, these sections apply to the Health and Safety Code. They do not govern the construction of the Civil Code, and it is the legislative intent behind that statute that is at issue here. (See *People v. Domagalski*, *supra*, 214 Cal.App.3d at p. 1386.)

We conclude that the incorporation of the term "food establishment" into Civil Code section 1940, subdivision (b)(2)(E) was intended to be a reference to that specific term rather than to the broader statutory scheme of the Uniform Retail Food Facilities Law. Vending machines, therefore, are not a food service for purposes of the hotel exemption in subdivision (b)(2)(E).

### b. "Order Inn" Program

The evidence offered in support of HVM's summary judgment motion shows that the "Order Inn" program is a room service program administered by Order Inn Hospitality Services, Inc. (OII) pursuant to an agreement with HVM. The agreement provides that OII "brokers such services from OII approved and contracted local services providers within the vicinity of" its clients' properties. HVM's regional director declared that the food is prepared by "an adjacent or local vendor." At her deposition, she testified there were restaurants located "across the street" or in walking distance of the hotel, but she also testified she did not know which restaurants contracted with OII.

In the statement of facts of their opening brief, appellants point out that there is no evidence the food for the "Order Inn" program came from a food establishment located "on or adjacent" to the hotel, as required by Civil Code section 1940, subdivision (b)(2)(E). Because appellants do not identify this as a separate issue on appeal, HVM argues we should deem it waived. Nevertheless, HVM addresses its merits. Appellants elaborate on the issue in reply. Since both sides have addressed the issue, we consider it

14

despite its flawed presentation in appellants' opening brief. (See *Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1025.)[3]

Although HVM's regional manager admittedly had no knowledge what specific restaurants OII contracts with, its agreement with HVM provides for contracts with restaurants "within the vicinity" of the hotel. The question is whether restaurants "within the vicinity" are "on or adjacent" to the premises of the hotel.

"'If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. [Citation.]'" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582.) The word "adjacent" means "not distant: nearby," and "may or may not imply contact but always implies absence of anything of the same kind in between." (Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 14.) Appellants argue that as used in the phrase "on or adjacent" the word "adjacent" should be construed narrowly to mean "next to (even if not touching)." HVM would like us to construe it more broadly as "nearby." As a rule, "[e]xceptions to the general provisions of a statute are to be narrowly construed." (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 921; see *Bakersfield Community Hosp. v. Department of Health* (1977) 77 Cal.App.3d 193 [construing "adjacent" narrowly in statute exempting health facility from having to obtain certificate of need to construct new facility on adjacent site].) Civil Code section 1940, subdivision (b) provides exceptions to the statutory scheme creating tenancy rights and therefore should be construed narrowly.

The phrase "on or adjacent" supports a narrow interpretation of the word "adjacent," on the principle that items in a list similar in nature and scope should be treated uniformly. "'[A] court will adopt a restrictive meaning of a listed item if

---

[3] The parties do not address the additional requirement that the food establishment itself must be "owned or operated by the innkeeper or owned or operated by a person or entity pursuant to a lease or similar relationship with the innkeeper or person or entity affiliated with the innkeeper." (Civ. Code, § 1940, subd. (b)(2)(E).)

15

acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list.' [Citation.]" (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 169.) An expansive construction of the word "adjacent" would render meaningless the alternative requirement that the food establishment be "on" the premises. Considering further that the food establishment "on or adjacent" to the premises replaced the previous requirement that there be "central dining" at the hotel, it is doubtful that the Legislature intended to stray too far afield.

In reviewing a summary judgment, we must view the evidence in the light most favorable to appellants. (*Shin v. Ahn*, *supra*, 42 Cal.4th at p. 499.) The word "vicinity" may be defined both narrowly as the "state of being near: proximity" or broadly as "surrounding area or district: neighborhood." (See Merriam-Webster's Collegiate Dict. (10th ed. 1995) p. 1316.) Thus, the phrase "within the vicinity" in HMV's contract with OII lends itself to a much broader interpretation than the word "adjacent." Since there is no evidence where the food for the "Order Inn" program came from or that there are any restaurants next to the hotel, the program cannot bring HVM within the exemption in Civil Code section 1940, subdivision (b)(2)(E), even were we to assume that such a program is encompassed in that exception.

HVM has not shown that its hotel was exempt from Civil Code section 1940.1 by virtue of Civil Code section 1940, subdivision (b)(2). Since it did not challenge appellants' claim based on the violation of the Civil Code provision on any other ground, issues of material fact remain, precluding summary judgment.

   *2. UCL Claims*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (Bus. & Prof. Code, § 17200.) It "'"borrows"' rules set out in other laws and makes violations of those rules independently actionable" as unlawful business practices. (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370, citing *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).)

What constitutes an "unfair business practice" in consumer cases is less clear because *Cel-Tech* left the issue open after rejecting earlier definitions as "amorphous." (See *Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 594–598 [delineating alternative approaches and adopting approach focusing on injury to consumer]; but see *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940 [unfair business practice claim based on public policy must "'be "tethered" to specific constitutional, statutory or regulatory provisions'"].)

Appellants' suggestion that HVM's compliance with the CUP may have been unfair to competitors is irrelevant since this is a consumer, rather than a competitor, case. Their remaining claims of unfairness are generally based on the assumption that HVM's practice of reregistering guests was unlawful because it violated the Arcadia Municipal Code and the California Constitution. As we have explained, that is not the case. Appellants' unlawful business practice claim was based on violations of Civil Code section 1940.1 and Revenue and Taxation Code section 7280, but they have not shown that the latter statute applies in this case. To the extent they claim the re-registration procedure was unlawful and unfair because it precluded hotel guests from obtaining tenants' rights under Civil Code sections 1940 et seq., appellants' UCL claim is an extension of their claim for violation of Civil Code section 1940.1. It is premature to decide whether appellants may pursue their UCL claim based on an alleged violation.

The summary judgment for HVM is reversed because HVM did not meet its burden of establishing an exemption to Civil Code section 1940.1 under Civil Code section 1940, subdivision (b)(2)(E). We express no view on whether that section applies against HVM or whether it was violated, as neither issue is before us. Because we reverse the summary judgment, we need not and do not decide whether appellants may pursue a UCL claim based on Civil Code section 1940.1, or what their remedies under either statute may be.

17

III

Appellants argue that the court abused its discretion in denying their motion for leave to amend the first amended complaint to allege additional claims against the City. Specifically, appellants sought to allege violations of the takings, due process, and equal protection provisions of the United States Constitution; a civil rights violation (42 U.S.C. §1983); a violation of article XIII C of the California Constitution; conversion and unjust enrichment.

"'"[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown. [Citations.]"' [Citation.] Nevertheless, it is also true that courts generally should permit amendment to the complaint at any stage of the proceedings, up to and including trial. [Citations.] But this policy applies "'only '[w]here no prejudice is shown to the adverse party.'"' [Citation.] Moreover, "'"even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.'"' [Citations.] Thus, appellate courts are less likely to find an abuse of discretion where, for example, the proposed amendment is "'offered after long unexplained delay . . . or where there is a lack of diligence . . . .'" [Citation.]" (*Melican v. Regents of University of California* (2007) 151 Cal.App.4th 168, 175 (*Melican*).) "[U]nexcused delay is sufficient to uphold a trial judge's decision to deny the opportunity to amend pleadings, particularly where the new amendment would interject a new issue which requires further discovery. [Citation.]" (*Green v. Santa Margarita Mortgage Co.* (1994) 28 Cal.App.4th 686, 692.)

Appellants' explanations for the two-year delay in seeking leave to amend are as follows: The delay was due to the transfer of the case to the Complex Civil Division, to taking the individual plaintiffs' depositions in preparation for a motion for class certification that was never made, and to their reluctance "to work more on the case" in light of HVM's summary judgment motion. They also blame the City for not filing a

18

demurrer to alert them sooner that Revenue and Taxation Code section 7280 did not apply to it.  None of these reasons justifies the delay.

Appellants claim they sought leave to amend to clarify their request for a declaration regarding the violation of the Arcadia Municipal Code.  As we explained, that claim was already raised, albeit cursorily, in the first amended complaint and in opposition to the summary judgment motion.  It was not a new claim.  In fact, appellants argue that most claims they sought to add to the complaint were "nothing entirely new." If that is so, then it is unclear why they could not have been asserted earlier, or what difference they would have made in the case.

Appellants also argue the City would not have been prejudiced by the proposed amendment because there was no pending trial date and only the equal protection claim would have required discovery.  As early as the original complaint, appellants had suggested that other hotels located in the City were not subject to the same CUP, and that therefore they had been treated "unequally."  They claim to have confirmed through discovery that HVM's was the only hotel in the City subject to the CUP, but they do not state when that confirmation occurred and why the claim could not have been brought in the first amended complaint.

What the record and appellants' own explanations make clear is that appellants sought to amend only because HVM's summary judgment motion successfully challenged their entire action and left them with no valid cause of action against the City. That the City on its part delayed taking action to obtain a judgment in its favor does not excuse appellants' attempt to make their complaint into a "moving target" after an unreasonable delay.  (Cf. *Melican*, *supra*, 151 Cal.App.4th at p. 176 [finding it would be unfair to allow plaintiffs to add new claims in order to defeat a summary judgment motion].)

Under the circumstances, the trial court did not abuse its discretion in denying appellants' motion for leave to amend.

19

## DISPOSITION

The judgment for HVM in case No. B249121 is reversed and the case is remanded for further proceedings.  HVM and appellants are to bear their own costs on appeal in that case.

The judgment for the City in case No. B251374 is affirmed.  The City is entitled to its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

20